EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Víctor Cruz González<br><br>Peticionario<br><br>v.<br><br>Pep Boys<br><br>Recurrido | Certiorari<br><br>2007 TSPR 3<br><br>169 DPR \_\_\_\_ |

Número del Caso: CC-2005-431

Fecha: 11 de enero de 2007

Tribunal de Apelaciones:

> Región Judicial de Aguadilla

Juez Ponente:

> Hon. Roberto L. Córdova Arone

Abogado de la Parte Peticionaria:

> Lcdo. Ramón A. Pérez González

Abogada de la Parte Recurrida:

> Lcdo. Carlos A. Padilla Vélez
> Lcdo. Antonio L. García Ramírez

Materia: Ley 2, Proc. Sumario, Salarios; Ley 45 del Fondo del Seguro del Estado Art. 5-A, Daños y Perjuicios Ley 80, Despido Injustificado

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Víctor Cruz González<br><br>Peticionario<br><br>v.<br><br>Pep Boys<br><br>Recurrido | Certiorari<br><br>2007 TSPR 3<br><br>169 DPR \_\_\_\_ |

Número del Caso: CC-2005-431

Fecha: 11 de enero de 2007

Tribunal de Apelaciones:

        Región Judicial de Aguadilla


Juez Ponente:

        Hon. Roberto L. Córdova Arone


Abogado de la Parte Peticionaria:

        Lcdo. Ramón A. Pérez González

Abogada de la Parte Recurrida:

        Lcdo. Carlos A. Padilla Vélez
        Lcdo. Antonio L. García Ramírez




Materia: Ley 45 del Fondo del Seguro del Estado Art. 5-A, Daños y Perjuicios Ley 80, Despido Injustificado


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Víctor Cruz González

    Peticionario

        v.

Pep Boys

    Recurrido

                    CC-2005-431

SENTENCIA

San Juan, Puerto Rico, a 11 de enero de 2007

El peticionario, Víctor Cruz González comenzó a trabajar en Pep Boys como técnico automotriz, el 18 de mayo de 2000. El 30 de junio de 2003, sufrió un accidente laboral en el que se lastimó su espalda mientras instalaba unas piezas de un vehículo de motor. Al día siguiente y como resultado del accidente, Cruz González se reportó a la Corporación del Fondo del Seguro del Estado (el "Fondo"). El Fondo le concedió tratamiento en descanso diagnosticándole trauma lumbar. Poco después, su condición empeoró y fue hospitalizado en el Hospital Industrial. En octubre de 2003, el Fondo le dio de alta definitiva sin fijarle incapacidad.

Inconforme con la determinación del Fondo de no fijarle incapacidad, el peticionario acudió en revisión ante la Comisión Industrial. Pendiente el recurso, el señor Cruz González le solicitó a su patrono que le reinstalara en su puesto, pues había sido dado de alta por el Fondo. El patrono le solicitó que presentara un certificado médico que especificara con mayor rigor su condición médica. Cruz González acudió en varias ocasiones a su lugar de empleo solicitando su reinstalación, pero en todas las ocasiones se condicionó su reingreso a que sometiera la evidencia médica requerida. El peticionario nunca sometió el documento requerido.

El 12 de abril de 2004, el peticionario presentó una querella contra Pep Boys en el Tribunal de Primera Instancia al amparo del procedimiento sumario de reclamaciones salariales. 32 L.P.R.A. secs. 3118 et seq. En la demanda instada se alegó que el patrono había violado la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, 11 L.P.R.A. secs. et seq., al negarse a reinstalarlo al empleo. Se adujo además que Cruz González fue despedido injustamente. En la querella instada, el peticionario solicitó la reinstalación a su empleo, el pago de los salarios que hubiese devengado de haber sido reinstalado y daños y perjuicios por las alegadas violaciones del ley. En la alternativa, solicitó el remedio de mesada dispuesto en la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185.

Pep Boys contestó la demanda y oportunamente solicitó que se dictara sentencia sumaria a su favor. El peticionario se opuso. Mientras se dilucidaba el pleito, la Comisión Industrial resolvió la apelación que había instado el señor Cruz González. La Comisión devolvió el caso al Fondo para que se le ofreciera tratamiento médico al peticionario. Una vez devuelto el caso ante el Fondo, éste determinó concederle al peticionario un CT. En otras palabras, el Fondo dispuso que el señor Cruz González recibiera tratamiento médico mientras trabajaba.

Así las cosas, el 21 de diciembre de 2004, el foro primario dictó sentencia sumaria a favor de Pep Boys. El señor Cruz González acudió ante el Tribunal de Apelaciones. El foro apelativo intermedio confirmó la determinación del foro sentenciador. Concluyó, que al momento de solicitar reinstalación el peticionario no se encontraba apto para trabajar y así lo reflejaba el récord del caso.

Inconforme, Cruz González acudió ante este Tribunal señalando como error el siguiente:

> "Erró el Tribunal de Apelaciones al confirmar la sentencia emitida por el Tribunal de Primera Instancia, que desestimó sumariamente la querella presentada por el querellante peticionario."

Las partes comparecieron posteriormente y presentaron sus respectivos alegatos.

Estudiados los alegatos presentados por las partes así como el expediente del caso, se dicta sentencia y se revoca la sentencia dictada por el Tribunal de Apelaciones, se devuelve el caso al Tribunal de Primera Instancia para que

celebre la vista en su fondo y se determine si en efecto el señor Cruz González se encontraba apto para trabajar al momento de solicitar reinstalación a su empleo.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emite Opinión de conformidad a la cual se le unen el Juez Presidente señor Hernández Denton y el Juez Asociado señor Rebollo López. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Víctor Cruz González

    Peticionario

       v.                    CC-2005-431

Pep Boys

    Recurrido

Opinión de Conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se le unen el Juez Presidente señor Hernández Denton y el Juez Asociado señor Rebollo López

San Juan, Puerto Rico, a 11 de enero de 2007

La cuestión a resolver en esta ocasión, es si una determinación de la Corporación del Fondo del Seguro del Estado (el "Fondo"), dando de alta a un empleado luego de éste sufrir un accidente ocupacional, supone que el empleado está capacitado para desempeñar las funciones de su puesto, por lo que el patrono no puede requerir evidencia adicional del empleado que corrobore su aptitud para el trabajo.

## I

El señor Víctor Cruz González ("Cruz González" o el "peticionario") comenzó a trabajar en Pep Boys como técnico automotriz, el 18 de mayo de 2000.

Entre sus funciones estaba hacer diagnósticos de los automóviles, instalar gomas y piezas a los vehículos de motor, descargar mercancía de furgones, tales como gomas, baterías, aceite y herramientas. Tales funciones requerían realizar esfuerzo físico continuamente, doblar el cuello, la cintura y estar de pie todo el tiempo.

El 30 de junio de 2003, el peticionario sufrió un accidente laboral en el que se lastimó su espalda mientras instalaba unas piezas a un vehículo de motor. Por tal razón, el peticionario se reportó al día siguiente, 1ro. de julio de 2003, a la Corporación del Fondo del Seguro del Estado. Ese mismo día, el Fondo le concedió tratamiento en descanso y le diagnosticó trauma lumbar, que luego resultó ser un disco herniado y el nervio ciático pinchado. Pocos días después, mientras recibía tratamiento en descanso, sus padecimientos empeoraron al extremo de no poder caminar. Debido a ello, fue hospitalizado ocho (8) días en el Hospital Industrial. Al cabo de ese tiempo, continuó recibiendo tratamiento médico en descanso hasta el 7 de octubre de 2003, cuando el Fondo le dio de alta definitiva sin fijarle incapacidad.

Oportunamente, el señor Cruz González apeló ante la Comisión Industrial la decisión del Fondo de darle de alta definitiva sin fijarle por ciento de incapacidad. El fundamento de dicha apelación se consignó en los siguientes términos: "solicito tratamiento médico e incapacidad, tengo dolor en la espalda, no puedo caminar bien, **en mis condiciones no puedo volver a ejercer mis funciones en el**

**lugar donde trabajo, no me puedo doblar, no puedo dormir por causa de los dolores."**

Al mismo tiempo, el señor Cruz González solicitó a su patrono que le reinstalara en su puesto. El peticionario le entregó a su supervisor inmediato la "Decisión del Administrador sobre Tratamiento Médico" que indicaba que éste había sido dado de alta del Fondo el día anterior, sin incapacidad. No obstante, el peticionario le expresó a su supervisor que aún no se sentía bien y que había apelado dicha determinación ante la Comisión Industrial. Inmediatamente, el supervisor le solicitó que presentara un certificado médico adicional que fuera más específico en cuanto a su condición médica. Luego de ello, el señor Cruz González acudió en varias ocasiones al taller de empleo para solicitar su reinstalación, pero en todas las ocasiones se condicionó su reingreso a que sometiera la evidencia médica requerida. El peticionario nunca la produjo.

Ante la negativa a reinstalarlo, el peticionario presentó una querella ante el Departamento del Trabajo, Negociado de Normas de Trabajo, por despido injustificado y violación a la Ley del Sistema de Accidentes en el Trabajo, *infra.* Así las cosas, Pep Boys envió el 4 de enero de 2004, una misiva al peticionario expresándole su disposición de reinstalarlo en su puesto bajo la condición de que éste proveyera un certificado médico que indicara que se encontraba físicamente capacitado para trabajar.

Mediante carta del 24 de enero de 2004, el Departamento del Trabajo determinó que Pep Boys adeudaba al peticionario la suma de $4,064.00 por concepto de salarios dejados de devengar conforme dispone la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 *et seq* ("Ley Núm. 45"). Además, se ordenó la reposición del peticionario en su empleo.[1]

El 12 de abril de 2004 el peticionario presentó una querella contra Pep Boys en el Tribunal de Primera Instancia al amparo del procedimiento sumario de reclamaciones salariales, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. secs. 3118 *et seq.*[2] En la misma, se alegó que el patrono había violado la Ley Núm. 45, *supra*, al negarle la reinstalación al peticionario, a pesar de que éste la solicitó dentro de los 15 días de haber sido dado de alta por el Fondo y sin que hubiesen pasado 12 meses desde que ocurrió el accidente. Se alegó, además, que al momento de solicitar su reinstalación se encontraba física y mentalmente capacitado para ocupar el puesto que desempeñaba al momento de ocurrir el accidente y

---

[1] Posterior a ello, el Departamento del Trabajo envió una carta al peticionario para que compareciera a sus oficinas el 14 de abril de 2004 para discutir los resultados de la investigación de su caso. No surge del expediente si hubo algún procedimiento ulterior o **alguna determinación final del ente administrativo que fuera concluyente para el presente caso.**

[2] Luego, se determinó que la querella se tramitaría bajo el procedimiento ordinario.

que dicho puesto aún subsistía. Finalmente, se adujo que fue despedido injustificadamente.

El peticionario solicitó la reinstalación a su empleo, el pago de los salarios que hubiese devengado de haber sido reinstalado y daños y perjuicios por las presuntas violaciones de ley. En la alternativa, solicitó el remedio de mesada dispuesto en la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185.

Oportunamente, Pep Boys contestó la querella presentada en su contra, negó las alegaciones esenciales del querellante y levantó varias defensas afirmativas, entre ellas: (1) que el peticionario no se encontraba ni física ni emocionalmente apto para ejercer las funciones de su plaza, y (2), que el peticionario no fue despedido.[3]

Posteriormente, Pep Boys solicitó del Tribunal de Primera Instancia que dictara sentencia sumaria a su favor. Alegó que la única razón por la cual el Fondo concedió el alta al peticionario fue debido a que éste no estuvo de acuerdo en someterse al tratamiento médico disponible, el cual consistía en una operación quirúrgica, toda vez que no le garantizaban que luego de la operación pudiese caminar.

En apoyo de lo anterior, Pep Boys incluyó con la moción de sentencia sumaria una transcripción de la deposición tomada al peticionario el 23 de julio de 2004. En la misma, éste admitió, además, que en la fecha en que

---

[3] Entre las defensas afirmativas, el patrono alegó además que el peticionario "libre, voluntaria y espontáneamente expresó a los oficiales de la empresa que no estaba ni física ni mentalmente capacitado para desempeñarse en su puesto de Técnico Automotriz." Apéndice, a la pág. 8.

solicitó su reinstalación, no podía ejercer las funciones esenciales de su plaza, las cuales requerían, entre otras cosas, levantar objetos pesados de hasta 83 libras, doblar su cuello y su espalda. En consecuencia, Pep Boys adujo que el peticionario no cumplió con todos los requisitos que establece el Art. 5(a) de la Ley Núm. 45 para ser acreedor a la reinstalación.

El peticionario, por su parte, presentó oposición a la solicitud de sentencia sumaria. En la misma, el señor Cruz González señaló que de la deposición presentada se desprende que estaba capacitado para trabajar. Además, que tenía derecho a ser reinstalado toda vez que el Fondo lo había dado de alta, lo cual automáticamente lo cualificaba para ejercer las funciones de su puesto y que su apelación ante la Comisión Industrial obedeció a que éste interesaba que se le diera un "CT", en lugar de un alta definitiva.

Mientras se ventilaban los procedimientos ante el Tribunal de Primera Instancia, la Comisión Industrial resolvió la apelación que había instado el señor Cruz González. En su resolución del 8 de septiembre de 2004, la Comisión decidió devolver el caso al Fondo para que se le ofreciera tratamiento al peticionario. Una vez devuelto el caso, el Fondo determinó concederle al peticionario un "CT", es decir que continuara recibiendo tratamiento médico mientras trabajaba, a partir del 4 de octubre de 2004.

Así las cosas, el 21 de diciembre de 2004, el Tribunal de Primera Instancia dictó sentencia declarando con lugar la solicitud de sentencia sumaria. En su sentencia, el

foro primario expresó que de la deposición tomada al peticionario surgía que al momento de éste solicitar su reinstalación, "no se sentía bien, no podía doblar su cuerpo; sólo con dificultad; que no podía levantar objetos pesados, lo cual según reconoció era una <u>función especial</u> de su puesto, que al no sentirse bien y no estar de acuerdo con el alta recibida, radicó una apelación ante la Comisión Industrial." (Énfasis en el original). Sentencia del Tribunal de Primera Instancia, Apéndice, a las págs. 157-158.

No conforme, el señor Cruz González acudió ante el Tribunal de Apelaciones. El foro intermedio apelativo confirmó la determinación del foro sentenciador por entender que la evidencia que constaba en el expediente claramente demostraba que cuando el peticionario solicitó la reposición a su puesto, no se encontraba físicamente apto para ejercer las funciones del mismo. En consecuencia, dicho foro concluyó que el peticionario no cumplió con todos los requisitos que dispone el Art. 5(a) de la Ley Núm. 45, *supra*.

Insatisfecho todavía, el señor Cruz González acudió ante nosotros mediante recurso de *certiorari* y nos planteó como único señalamiento de error que:

> Erró el Tribunal de Apelaciones al confirmar la sentencia emitida por el Tribunal de Primera Instancia, que desestimó sumariamente la querella presentada por el querellante peticionario.[4]

---

[4] En el alegato que posteriormente nos sometió, el peticionario reformuló su señalamiento de error de la siguiente manera:

Ambas partes han comparecido con sus respectivos alegatos, por lo que estamos en posición de resolver y así procedemos.

## II

## A

La Ley de Compensaciones por Accidentes del Trabajo, *supra*, es una legislación de protección social que reconoce e instrumenta el derecho constitucional de todos los trabajadores en Puerto Rico a recibir protección contra riesgos a la salud e integridad personal en sus talleres de trabajo, derecho que está garantizado por el Artículo II, Sec. 16 de la Constitución del Estado Libre Asociado de Puerto Rico. Véase, *Rivera v. Blanco Vélez Stores*, 155 D.P.R. 460 (2001).

Esta legislación, de carácter remedial, ofrece ciertas garantías y beneficios al trabajador que sufre un accidente o enfermedad relacionado con el trabajo que lo inhabilite para realizar sus funciones. Entre las disposiciones que provee la ley a tales fines se encuentra el Art. 5(a), el cual le impone al patrono la obligación de reservar por doce meses (360 días) el empleo a aquel trabajador que ha sufrido un accidente o enfermedad ocupacional. Conjuntamente, el patrono tiene el deber de reinstalar al

---

Erró el Tribunal de Apelaciones al determinar que no había controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debía dictarse sentencia sumaria.

Erró el Tribunal de Apelaciones al determinar que el peticionario no puede prevalecer bajo ningún supuesto de hecho y que no tiene derecho a la concesión de un remedio, cualquiera que éste sea.

empleado en su antiguo puesto, siempre que concurran las condiciones que estatuye dicho artículo.[5] Véase discusión *infra*. En consecuencia, el empleado no podrá ser despedido

---

[5] El Artículo 5(a) de la Ley Núm.45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 7, reza de la siguiente manera:

> En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este Capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:
>
> (1) Que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta o fuere autorizado a trabajar con derecho a tratamiento, siempre y cuando dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente;
>
> (2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición, y
>
> (3) que dicho empleo subsista en el momento en que el obrero o empleado solicite reposición. (Se entenderá que el empleo subsiste cuando el mismo esté vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición).
>
> Si el patrono no cumpliera con las disposiciones de esta sección vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podían instar y tramitar la correspondiente reclamación de reinstalación y/o daños en corte por la acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en las secciones. 3118 a 3132 del Título 32. 11 L.P.R.A. sec. 7.

durante ese periodo de tiempo, salvo que medie justa causa.[6] *García v. Darex P.R., Inc.*, 148 D.P.R. 364 (1999); *Santiago v. Kodak,* 129 D.P.R. 763 (1992).

Hemos establecido que el cómputo de los 12 meses de reserva que provee el Artículo 5(a) es de caducidad y comienza a transcurrir a partir de la fecha en que ocurrió el accidente o enfermedad laboral. *Segarra Hernández v. Royal Bank*, 145 d.P.R. 178, 199 (1998). Por tratarse de un término de caducidad, este periodo de reserva, tiene una existencia limitada que se consume por el transcurso del tiempo fijado por ley. No está sujeto a interrupción ni ampliación de clase alguna. *Torres González v. Star Kist*, 134 D.P.R. 1024, 1033 (1994); *Vélez Rodríguez v. Pueblo Internacional, Inc.,* 135 D.P.R. 500 (1994). Véase además, Opiniones del Fondo del Seguro del Estado, Consulta Núm. C-89-15 de 6 de julio de 1989; Consulta Núm. C-92-17 de 19 de junio de 1992; Consulta Núm. C-96-43 de 30 de septiembre de 1996. Incluso, hemos determinado que el aludido término de 12 meses que dispone el Art. 5(a), no se interrumpe por el hecho del empleado presentar una apelación ante la Comisión Industrial. *Cintrón v. SF&F Lab. Co.*, 142 D.P.R. 803, 814 (1997). Véase además, Opinión del Fondo del Seguro de Estado, Consulta Núm. C-90-30 de 15 de agosto de 1990.[7]

---

[6] Hemos interpretado que habrá justa causa para despedir al trabajador que ha sufrido un accidente del trabajo si con anterioridad a sufrir dicho accidente llevó a cabo una conducta que es causa justificada para despedirlo. Véase, *Santiago v. Kodak*, 129 D.P.R. 763 (1992).

[7] En dicha Opinión se expresó lo siguiente:

Ciertamente, el referido Art. 5(a) constituye una limitación a la discreción del patrono para administrar su negocio porque le prohíbe que durante el término de reserva despida a un empleado que ha sufrido un accidente o contraído una enfermedad durante el desempeño de su trabajo. No obstante, la prohibición de despido y la obligación de reservar y reinstalar al trabajador en el puesto que desempeñaba al momento en que se inhabilitó para trabajar, no es absoluta. *Rodríguez* v. *Méndez & Co.*, 144 D.P.R. 734, 741 (1999); *Santiago v. Kodak*, *supra*, a la pág. 770. Esta obligación del patrono está sujeta a que se

De igual forma, las apelaciones radicadas ante la Comisión Industrial de Puerto Rico, o las decisiones que éste emita, no tienen el efecto e [sic] interrumpir el término de 12 meses por dos razones fundamentales:

(1) Como se señala anteriormente el referido término es de caducidad, no sujeto a interrupción o ampliación de clase alguna y

(2) el artículo 10 de la ley, [Ley Núm. 45, *supra*] que regula todo lo concerniente a las apelaciones ante la Comisión Industrial, no establece que la radicación de las referidas apelaciones, tengan el efecto de interrumpir o ampliar el referido término.

Debe recordarse que las apelaciones ante la Comisión Industrial, son partes intrínsecas del andamiaje administrativo procesal, establecido en la ley para la protección de los derechos de los obreros o empleados que sufren un accidente del trabajo y no tiene el efecto de conceder mayores derechos que aquellos contemplados o reconocidos en el estatuto.

Aunque la ley de Compensaciones por accidentes del Trabajo, es una de carácter remedial y exige una interpretación liberal, no puede incluirse en la ley, por vía de interpretación, lo que no está dispuesto en la misma. (Citas Omitidas).

cumplan los requisitos que el propio artículo establece, a saber:

1. que el accidente o enfermedad ocupacional inhabilite al empleado para trabajar;

2. que el empleado se acoja a los beneficios de la Ley Núm. 45;

3. que dentro de los quince (15) días de haber sido dado de alta o autorizado a trabajar por el Fondo con derecho a tratamiento, el empleado solicite al patrono reposición en su empleo;[8]

4. que dicho requerimiento de reposición se haga dentro de los doce (12) meses de haber ocurrido el accidente o enfermedad;

5. **que al solicitar su reposición el empleado esté física y mentalmente capacitado para desempeñarse en las funciones del empleo que ocupaba;**

6. que dicho empleo subsista al momento en que el trabajador solicita su reinstalación.

*Santiago v. Kodak Caribbean, Ltd.*, *supra*; *Cuevas v. Ethicon*, 148 D.P.R. 839 (1999).

**Reiteradamente hemos establecido que es necesario que converjan todos los requisitos mencionados para que se configure la protección de reinstalación que consagra el**

---

[8] Mediante la Ley Núm. 162 de 24 de junio de 2004 se enmendó el Artículo 5(a) de la Ley Núm. 45, *supra*, a los fines de aclarar que el término de quince días dispuesto para que un empleado lesionado solicite su reinstalación en el empleo comienza a transcurrir no solamente desde la fecha en que es dado de alta por el Fondo, sino también desde que dicha agencia lo autoriza a trabajar con derecho a tratamiento ("CT").

**Art. 5(a).** *Rivera v. Vélez Stores*, a la pág. 468. El legislador, al imponer estos requisitos intentó establecer un balance entre los intereses del patrono y la protección social al empleado lesionado. Por un lado, la ley le proporciona al trabajador que sufre un accidente ocupacional gran tranquilidad porque tiene la seguridad de que, cumpliendo ciertos requisitos, su ausencia en el trabajo durante doce meses no le priva su derecho a ser reinstalado en su empleo. *García v. Darex*, *supra*, pág. 377; *Vélez v. Pueblo Internacional, Inc.*, 135 D.P.R. 500, 513 (1994). Pero a la misma vez, se imponen restricciones para el reingreso al trabajo y se limita el tiempo en que el patrono tiene que reservar el puesto, para así aliviar la carga que supone para cualquier patrono verse obligado por la ley a congelar un sinnúmero de plazas por un período de tiempo. *Segarra Hernández v. Royal Bank*, 145 D.P.R. 178, 199 (1998). R. N. Delgado Zayas, *Apuntes para el Estudio de la Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño*, San Juan, Puerto Rico, 2005, a la pág. 191.

En esta ocasión, debemos expresarnos sobre el requisito del Art. 5(a) de la Ley Núm. 45 que exige que el empleado se encuentre, al momento de solicitar reinstalación, "mental y físicamente capacitado para ocupar dicho empleo" y si se cumple con dicho requerimiento, meramente presentando ante el patrono la certificación emitida por el Fondo dando de alta al empleado, sin que

éste pueda requerir información adicional sobre la condición del empleado.

**B**

La Ley Núm. 45, "no establece los requisitos [de forma] que debe cumplir el obrero al solicitar que se le reponga en su empleo," por lo que cada controversia debe atenderse caso a caso, en función de la naturaleza reparadora de la ley y con particular atención al propio lenguaje de la misma. R. N. Delgado Zayas, *op. cit.,* pág. 192.

Anteriormente, hemos expresado que una determinación del Fondo que autoriza a un empleado a trabajar mientras recibe tratamiento médico, "necesariamente presupone que éste está habilitado para trabajar y puede efectivamente reintegrase a la fuerza laboral." *Rivera v. Blanco Vélez Stores*, *supra,* a la pág. 472.

Incluso, hemos señalado que "es de presumirse que un obrero en "CT" cumple con [los requisitos que preceptúa el Artículo 5(a)], pues de otro modo no se explica como el Fondo le ha dado de alta para trabajar mientras recibe tratamiento." *Rivera v. Blanco Vélez Stores*, *supra*, a la pág. 473. Hemos basado ese razonamiento, en parte, en el Reglamento sobre Derechos de Obreros y Empleados, Reglamento Núm. 3966 de 9 de agosto de 1989 (el "Reglamento"), que establece en su Sección 4(Q), que el "CT" se concede a un empleado "cuando el programa terapéutico trazado [al] paciente se efectúa mientras éste sigue trabajando, ya que está hábil para hacerlo según el

cuadro clínico diagnosticado por el médico".[9] Por lo tanto, nuestras expresiones encuentran apoyo en el propio Reglamento que rige los procesos ante el Fondo.

En lo que concierne la controversia que hoy nos ocupa, el Reglamento indica en su Sección 7, que la determinación de dar de alta a un trabajador ocurre: "[c]uando el Administrador, previos los dictámenes médicos rendidos en cualquier caso, **llegue a la conclusión de que mayor tratamiento no ha de mejorar la condición del obrero o empleado, le dará de alta** y procederá a fijar el grado de incapacidad con que haya quedado, si alguna." (Énfasis suplido). La definición que provee el Reglamento sobre la determinación de alta no nos permite concluir que, necesariamente, el empleado está hábil para realizar las funciones de su puesto. Más bien, según el texto del Reglamento, lo único que certifica una determinación de alta es que no existe otro tratamiento que pueda mejorar la condición del obrero o empleado.[10] **Por lo tanto, la determinación de alta, no conlleva inevitablemente una adjudicación por parte del Fondo en el sentido que el**

---

[9] El Reglamento Núm. 3966 fue promulgado el 10 de octubre de 1989, con el propósito de establecer de forma clara y específica aquellos derechos que confiere la Ley de Compensaciones por Accidentes del Trabajo. Sección I, Reglamento Núm. 3966.

[10] Cabe señalar que la certificación que produce el Fondo que certifica que el empleado ha sido dado de alta definitiva no provee un acápite en el que se explique si las razones por las que se dio de alta al empleado obedece a que el empleado se encuentra capacitado para regresar a sus funciones.

**empleado está capacitado para desempeñar las funciones propias de su puesto.**

Reiteradamente hemos resuelto que la Ley de Compensaciones por Accidentes del Trabajo debe interpretarse liberalmente a favor del obrero por ser ésta un estatuto remedial. *Ortiz v. F.S.E.*, 137 D.P.R. 367 (1994). Sin embargo, esto no significa que si "la ley es clara [y] libre de ambigüedad, la letra de ella [deba] ser menospreciada bajo pretexto de cumplir su espíritu." Articulo 14 del Código Civil, 31 L.P.R.A. sec. 201; *Ríos v. Méndez & Co.,* 115 D.P.R. 50, 53 (1984).

No obstante lo anterior, el objetivo del tratamiento médico que se le ofrece al empleado lesionado o enfermo una vez se acoge a los beneficios del Fondo es "facilitarle su recuperación y retorno a las labores." *Rivera v. Vélez Stores*, *supra*, a la pág. 470. La Sección 7 del Reglamento dispone que "el objetivo primordial de[l] . . . tratamiento [médico] es que el obrero o empleado se reintegre a la fuerza trabajadora." De ahí que, se le garantice a todo trabajador de recibir todo tratamiento médico que el facultativo del Fondo determine que sea necesario de suerte que el obrero pueda regresar a sus labores.

Por dicha razón soy del criterio que, una determinación de alta por parte del Fondo, en principio, presupone que se ha completado el programa terapéutico y el empleado se encuentra en condición para regresar a su

taller de trabajo.[11]  Por lo que, de no mediar alguna otra consideración de la cual se pueda inferir lo contrario, debemos considerar que el documento de alta emitido por el Fondo es una prueba *prima facie* de que el trabajador se encuentra capacitado para desempeñar las funciones de su antiguo puesto.  En otras palabras, crea una presunción rebatible de que el trabajador está hábil para el trabajo.  Con esta interpretación adelantamos y hacemos eficaz el objetivo primordial del tratamiento médico que ofrece el Fondo, a saber, que todo empleado regrese y se reincorpore a su trabajo.

Antes bien, como presunción rebatible al fin admite prueba en contrario.  Precisamente de eso trata la controversia ante nuestra consideración, a saber:  si exitía base suficiente —razonable y objetiva— para que el patrono concluyese que el peticionario no estaba apto para ejercer las funciones de su puesto no empece haber sido dado de alta por el Fondo y le exigiese prueba médica adicional para corroborar su aptitud para cumplir con las obligaciones y responsabilidades de su empleo.

Recapitulando, la determinación de alta del Fondo constituye evidencia *prima facie* de que el obrero cumple con el requisito que impone el Artículo 5(a) de que se

---

[11] Como nos señala el Lcdo. Ruy N. Delgado Zayas, el requerimiento de reinstalación "puede hacerse de varias formas, siempre y cuando se haga en tiempo y . . . éste le muestre al patrono **al menos** el documento que acredita que fue dado de alta y autorizado a trabajar."  Ruy N. Delgado Zayas, *Apuntes para el Estudio de la Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño, supra,* pág. 192.

encuentre física y mentalmente capacitado para desempeñar sus funciones que crea una presunción rebatible en tal sentido. Pero ello no es impedimento, para que en situaciones excepcionales se pueda rebatir dicha presunción.

**III**

Procede entonces analizar los hechos de este caso a la luz de los principios reseñados. La sentencia inicial dictada en este caso fue una sentencia sumaria en la cual se determinó que según la prueba suministrada no existía controversia de hecho en cuanto a que el peticionario no estaba físicamente capacitado para realizar sus funciones, por lo que como cuestión de derecho no cumplía con todos los requisitos que estatuye el Artículo 5(a) para que sea merecedor del derecho a la reinstalación.

La Regla 36 de Procedimiento Civil, 32 L.P.R.A. AP. III, R. 36, permite que cualquiera de las partes en un pleito pueda solicitar que el tribunal emita sentencia sumaria a su favor tras demostrar que no existe controversia real sustancial sobre los hechos pertinentes. Hemos resuelto, además, que la sentencia sumaria es un remedio extraordinario discrecional que sólo debe concederse cuando no hay una genuina controversia sobre hechos materiales y el Tribunal se convence que tiene ante sí la verdad de todos los hechos pertinentes. *Malavé v. Oriental Bank*, res. 20 de abril de 2006, D.P.R. ___ (2006) T.S.P.R. 63. *Audiovisual Lang v. Sist. Est. Natal Hnos.*, 144 D.P.R. 563 (1997).

La sentencia sumaria sólo debe dictarse en casos claros y cualquier duda en cuanto a si hay hechos pertinentes en controversia debe resolverse contra la parte que solicita la sentencia sumaria. Por ende, y conforme a las Reglas de Procedimiento Civil, el Tribunal solamente procederá a emitir una sentencia sumaria si a la luz de los documentos sometidos, además de los que contienen los autos, "no hay controversia real en cuanto a ningún hecho material y como cuestión de derecho procede dictarse." Regla 26.3, 32 L.P.R.A. Ap. III, R. 36.3; *García v. Darex P.R., Inc.*, 148 D.P.R. 364, 382 (1999); *Méndez Arocho v. El Vocero de P. R.*, 130 D.P.R. 867 (1992).

En el caso de autos, de la moción de sentencia sumaria presentada por Pep Boys y de la oposición a la misma presentada por el señor Cruz González, surge como hecho incontrovertido, que al momento del peticionario solicitar su reinstalación éste estaba apelando ante la Comisión Industrial la decisión del Fondo de concederle un alta definitiva sin incapacidad. Es un hecho incontrovertido, además, que en dicha apelación el peticionario expresó su inconformidad con la decisión del Fondo y a tales efectos señaló lo siguiente: "en mis condiciones **no puedo volver a ejercer mis funciones en el lugar donde trabajo, no me puedo doblar, no puedo dormir por causa de los dolores.**" (Énfasis nuestro). Además, surge de la deposición que se le tomó al peticionario que éste informó a su supervisor tales hechos. Transcripción de la deposición, Apéndice a la pág. 81. Estas expresiones levantan serias dudas acerca

de la verdadera rehabilitación del empleado cuando solicitó

su reinstalación y sobre la capacidad física de éste para

realizar sus funciones, que entre otras cosas incluían

doblarse, levantar objetos pesados y estar constantemente

de pie.[12]   Véase además,   Transcripción de la deposición;

Apéndice, pág. 75-76.

Por otro lado, surge del expediente que la Comisión

Industrial al resolver la apelación instada por el señor

Cruz González dispuso que el caso le fuera devuelto al

Fondo para que se le ofreciera tratamiento médico.  Una vez

ello ocurrió, el Fondo determinó conferirle al peticionario

---

[12] La descripción del puesto de técnico automotriz que fue estipulada por las partes es la siguiente:

Productivity

(A) Service personnel must be able to perform physical labor including but not limited to: (a) battery installation and charging (b) remove rotors and drums, true and replace, (c) tire changing, matching (d) removing and installing exhaust systems/ torches (e) removing and installing shock absorbers and struts (f) fluid and filter service (g) remove, repair, replace hard parts (h) disc and drum brake repair (i) wheel alignment/ steering/suspension (j) heating and cooling system (k) air conditioning service and repair (j) cruise control/ sounds/security/ phone installation (m) standard fuel systems (n) clutches (FWD and RWD) (o) performance tune-ups.
. . . .

. . . .

(D) While performing these job duties services personnel are required to lift a wide variety of items, including various hand and air tools. Lifting of weights from a few ounces to twenty-five (25) pounds would be performed a continuous basis.   Service personnel occasionally lift twenty-six to fifty (50) pounds during the day. Lifting of fifty (50) to eighty-three (83) pounds will occur one to three times per day…

un CT, que como sabemos, le permitía continuar trabajando mientras recibía tratamiento médico.

Los hechos antes mencionados ponen de manifiesto una incongruencia respecto un hecho material, a saber: si el peticionario estaba físicamente apto para trabajar. La única forma de dilucidar esta controversia es a través de un juicio plenario. En vista de lo anterior, erró el Tribunal de Primera Instancia al resolver este caso mediante el procedimiento sumario. Procede entonces revocar dicho dictamen y devolver a dicho foro tal y como se dispone en la sentencia dictada.


Anabelle Rodríguez Rodríguez
Juez Asociada