EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ventura Rivera González<br>    Querellante-Peticionario<br><br>         v.<br><br>Blanco Vélez Stores, Inc.<br>h/n/c Madison Plaza del Atlántico<br>    Querellante-Recurrido | Certiorari<br><br>2001 TSPR 146<br><br> 155 DPR _____ |

Número del Caso: CC-2001-331


Fecha: 30/octubre/2001


Tribunal de Circuito de Apelaciones:
                        Circuito Regional III


Juez Ponente:
                        Hon. Ismael Colón Birriel

Abogados de la Parte Peticionaria:
                        Lcdo. Héctor A. Cortés Babilonia
                        Lcda. Doris Aponte Ramírez

Abogados de la Parte Recurrida:
                        Lcdo. Javier Rivera Carbone
                        Lcdo. Miguel Palou Sabater


Materia: Despido Ilegal e Injustificado

    Este documento constituye un documento oficial del Tribunal
    Supremo que está sujeto a los cambios y correcciones del proceso
    de compilación y publicación oficial de las decisiones del
    Tribunal. Su distribución electrónica se hace como un servicio
    público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ventura Rivera González

    Querellante-Peticionario

       vs.                      CC-2001-331      CERTIORARI

Blanco Vélez Stores, Inc.
H/N/C Madison Plaza del
Atlántico

    Querellado-Recurrido

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 30 de octubre de 2001

El querellante, Ventura Rivera González, comenzó a trabajar para Blanco Vélez Stores, Inc. h/n/c Madison el 15 de abril de 1985; empezó trabajando como vendedor y luego lo ascendieron a Asistente de Gerente en la tienda de Plaza del Atlántico, labor que realizó hasta el 1991, cuando lo ascendieron a Gerente de esa misma tienda, localizada la misma en jurisdicción del pueblo de Arecibo.

El 15 de febrero de 1998, mientras cargaba unas cajas de mercancía de aproximadamente 40 libras, el Sr. Rivera González sufrió un "accidente del trabajo", a saber: experimentó un fuerte dolor de pecho que lo dejó

sin respiración teniendo que ser atendido de emergencia en el Hospital Cayetano Coll y Toste del mencionado pueblo. La facultativa médica que le atendió ese día le recomendó dos semanas de descanso con medicamentos para estabilizar el pulso y la condición que le aquejaba.

El 6 de abril de 1998, el Sr. Rivera González fue referido al Fondo de Seguro del Estado; allí se le examinó y se le ordenó descanso. El Fondo le brindó tratamiento por una condición orgánica y por una condición emocional. La condición orgánica se relacionó con el trabajo y se determinó que tenía esguince cervical, trapecios, espasmo dorsal, espasmo lumbar, adormecimiento en las piernas, dándosele de alta definitiva por la condición orgánica con incapacidad el 5 de febrero de 1999. En esa misma fecha, y en relación con la condición emocional, el Fondo le concedió un "CT", que significa o representa tratamiento mientras trabaja.

Así las cosas, luego de dársele de alta definitiva por su condición orgánica, el Sr. Rivera González se reportó a su trabajo el próximo día hábil, esto es, el 8 de febrero de 1999. Ese mismo día, se le entregó un memorando, suscrito por el Contralor de las tiendas Madison, Sr. Abraham Giraud, en el cual se le notificó que, dada la condición emocional que le aquejaba, no podía comenzar a trabajar hasta que el Fondo lo diera de alta completamente, esto es, tanto de la condición orgánica como de la emocional.

Inconforme con la decisión de Madison, el 26 de marzo de 1999, el Sr. Rivera González radicó ante el Tribunal de

Primera Instancia, Sala Superior de Arecibo, una Querella por Despido Injustificado e Ilegal, en violación al Artículo 5A de la Ley de Compensación por Accidentes del Trabajo, 11 L.P.R.A. sec. 7. En la misma alegó que la acción tomada por su patrono constituía un despido ilegal en vista de que la misma era violatoria del derecho a la reserva del empleo por un término de doce (12) meses, ya que se le despidió antes de que este término venciera. Por ello reclamó, al amparo del proceso sumario establecido en la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. 3118 et seq., la reinstalación inmediata a su puesto, el pago de los salarios dejados de percibir, daños y perjuicios y honorarios de abogado.

Tras contestar la querella, y habiendo terminado el descubrimiento de prueba, Madison presentó una moción de sentencia sumaria alegando, en síntesis, que a un empleado que es dado de alta definitiva por su condición orgánica, pero se mantiene en "CT" por su condición emocional, no le asiste el derecho a reinstalación porque la "alta en CT" no constituye el "alta definitiva", condición necesaria para activar su derecho a reinstalación conforme la Ley. En dicha moción, solicitó la desestimación de la querella. Madison, además, presentó una moción suplementaria a solicitud de sentencia sumaria y una segunda moción suplementaria de sentencia sumaria.

El 1 de marzo de 2000, Madison solicitó del tribunal de instancia que tomara conocimiento de que el 22 de febrero de

2000, el Fondo había notificado una decisión resolviendo que la condición emocional del Sr. Rivera González no guardaba relación alguna con su trabajo y en la cual ordenaba el cierre y archivo del caso. Por su parte, el Sr. Rivera González reiteró su oposición a la sentencia sumaria y replicó a la moción informativa sobre la decisión del Fondo ordenando el cierre y archivo del caso.

Mediante sentencia de 16 de mayo de 2000, archivada en autos el 18 de julio de 2000, el tribunal de instancia acogió los argumentos de Madison, declarando con lugar la moción de sentencia sumaria y desestimando la querella.

Inconforme, el 4 de agosto de 2000, el Sr. Rivera González acudió ante el Tribunal de Circuito de Apelaciones mediante recurso de apelación, señalando que el tribunal primario erró:

> "... al dictar Sentencia de Desestimación basando su decisión en que un patrono no está obligado a reinstalar a un empleado que se reporta a trabajar dentro del año de reserva de empleo con un CT (continuación de tratamiento). Esta decisión adopta la teoría del querellado que pretende que un empleado que cumple con todos los requisitos del Artículo 5A (11 LPRA 7) sea dejado fuera del trabajo y hasta despedido sin ningún derecho o protección de ley;
>
> ... al desestimar la querella en su totalidad existiendo una reclamación de despido injustificado independiente (29 LPRA 185, et seq.), la cual no podía ser resuelta mediante Sentencia Sumaria, ameritaba vista en su fondo, no existiendo base legal para justificar el despido del querellante."

Mediante sentencia emitida el 30 de marzo de 2001, el tribunal apelativo intermedio confirmó la sentencia apelada. Sostuvo que el derecho a la reinstalación del empleado, luego

de haber sufrido una incapacidad, procede cuando éste haya obtenido una "alta definitiva" por el Fondo, y esa "alta definitiva" no incluye el tratamiento en CT.

El 25 de abril de 2001, el Sr. Rivera González acudió ante este Tribunal, vía certiorari, imputándole al tribunal apelativo haber cometido exactamente los mismos errores del tribunal primario; esto es, 1) dictar sentencia desestimando la causa de acción a base del fundamento alegadamente erróneo de que el patrono no tiene la obligación de reinstalar a un empleado que se reporta a trabajar dentro del año de reserva si éste es dado de alta en CT; y, 2) al desestimar la querella del todo cuando existe una reclamación de despido justificado independiente, de la cual no se puede disponer mediante el mecanismo de la sentencia sumaria.

Examinada la petición de certiorari, le concedimos veinte (20) días al Recurrido-Querellado para mostrar causa por la cual este Tribunal no debía expedir el auto solicitado y dictar Sentencia revocatoria de la emitida por el tribunal apelativo.

El querellado-recurrido, Madison, compareció en cumplimiento de dicha Resolución. Estando en condiciones de resolver el recurso, procedemos a así hacerlo.

I

La Ley del Sistema de Accidentes en el Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. et seq., es una legislación de carácter remedial que consagra ciertas garantías y beneficios al obrero que haya sufrido un

accidente o enfermedad ocupacional en el escenario del trabajo. Soc. de Gananciales v. Royal Bank de P.R., res. el 1 de abril de 1998, 98 T.S.P.R. 36. Entre las medidas estatuidas en este sistema de protección social, se encuentra el Artículo 5A, el cual específicamente reconoce e instrumenta el derecho del trabajador puertorriqueño a recibir protección en su empleo contra riesgos a su salud e integridad personal, derecho garantizado por el Artículo II, Sec. 16 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1. Torres González v. Star Kist Caribe, Inc., 134 D.P.R. 1024, 1029; Cuevas Santiago v. Ethicon, res. el 30 de junio de 1999, 99 TSPR 107; R.N. Delgado Zayas, Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño, San Juan, Pubs. Laborales P.R., Revisión 1996, 187-188.

El citado Artículo 5A de la Ley de Compensaciones, preceptúa:

> En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este Capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:
>
> (1) Que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro de del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, siempre y cuando dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente;
>
> (2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición, y

(3) que dicho empleo subsista en el momento en que el obrero o empleado solicite reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe el mismo fuere cubierto por otro empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.)

Si el patrono no cumpliera con las disposiciones de esta sección vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o daños en corte por la acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en la sec. 3118 a 3132 del Título 32. 11 L.P.R.A. sec. 7. (Énfasis suplido.)

En esencia, la transcrita disposición estatutaria provee dos clases de protección al obrero inhabilitado por enfermedad o accidente; a saber, (1) el patrono está obligado a reservar el empleo que desempeñaba el trabajador al momento de ocurrir el accidente o enfermedad, y (2) el obrero está facultado para solicitar la reinstalación a su empleo si cumple a cabalidad cada uno de los requisitos esbozados en el mismo, requisitos que describimos en Torres González, ante, de la siguiente manera:

1.      que el accidente o enfermedad ocupacional inhabilite al empleado para trabajar;

2.      que el empleado se acoja a los beneficios de la Ley Núm. 45, supra;

3.      que dentro de los quince (15) días de haber sido dado de alta definitivamente y autorizado a trabajar por el Fondo, el empleado solicite al patrono reposición en su empleo;

4.        que dicho requerimiento de reposición se haga dentro de los doce (12) meses de haber ocurrido el accidente o enfermedad;

5.        que al solicitar su reposición el empleado esté física y mentalmente capacitado para desempeñarse en las funciones del empleo que ocupaba;

6.        que dicho empleo subsista al momento en que el trabajador solicita su reinstalación.[1]

En síntesis, la Ley protege al trabajador que sufre un accidente o enfermedad relacionada con el trabajo al imponerle una obligación legal al patrono de reservarle el empleo desde el momento en que ocurre el accidente o enfermedad relacionada con su empleo, sin poder despedirlo a menos que medie justa causa. García v. Darex P.R., Inc., res. el 20 de mayo de 1999, 99 TSPR 79. Ello, naturalmente, conlleva la obligación del patrono de reinstalar al obrero lesionado o enfermo a su puesto, una vez es dado de alta por el Fondo y solicita oportunamente que lo repongan en su empleo, siempre y cuando se cumpla con los requisitos y términos estatuidos.

Dicho de otra forma, si el empleado cumple con los citados requisitos y el patrono incumple con su obligación de reinstalar al obrero o empleado dentro de los doce meses de reserva, contados a partir del momento en que ocurrió el accidente o enfermedad ocupacional, éste tiene derecho a que el patrono le pague los salarios que éste hubiera devengado de haber sido reinstalado, además de los daños y perjuicios ocasionados por

---

[1] Véase, además, Santiago v. Kodak Caribbean, Ltd., 129 D.P.R. 763 (1992); Cuevas v. Ethicon, ante.

dicho incumplimiento. Rodríguez Rosa v. Méndez & Co., res. el 18 de marzo de 1999, 99 TSPR 23; Cuevas v. Ethicon, ante.

El término de doce meses o 360 días de reserva de empleo es un término de caducidad, es decir, no admite interrupción alguna. Transcurrido dicho término, el patrono tiene derecho a despedir al empleado si éste no ha sido dado de alta por el Fondo. Sociedad de Gananciales v. Royal Bank, ante; Carrón Lamoute v. Compañía de Turismo, 130 D.P.R. 70 (1992); García v. Darex P.R., Inc., ante; Santos Berríos v. Lederle, res. el 17 de abril de 2001, 2001 TSPR 53.

Por otro lado, si el obrero que recupera y es dado de alta por el Fondo, sufre una recidiva o recaída, sin mediar intervención de causa ajena al accidente o enfermedad inicial, la fecha del accidente original es la que se toma en consideración para computar el comienzo del transcurso del término de doce (12) meses. Carrón Lamoutte, ante. Debe mantenerse presente, además, que el patrono puede despedir al obrero lesionado una vez transcurren los 360 días desde el momento en que ocurrió el accidente o enfermedad sin que éste haya sido dado de alta por el Fondo. Santos Berrios v. Lederle, ante. Ahora bien, si el empleado no solicita reinstalación dentro de los términos contemplados en la Ley y el patrono lo despide, la cesantía no configura un despido injustificado ya que la propia Ley lo contempla como una prerrogativa del patrono ante la ausencia de una oportuna solicitud de reinstalación al puesto que ocupaba el obrero lesionado. García v. Darex, ante.

Precisamos que el legislador, a través de estos requisitos, intentó establecer un balance de intereses entre los derechos del patrono y la protección social al empleado lesionado impuesto por esta Ley. Destacamos que el Artículo 5A es de carácter especial y sólo cobija al trabajador que sufre un accidente de trabajo o enfermedad ocupacional que lo inhabilita para desempeñar sus funciones y cuya ausencia del trabajo es autorizada por el Fondo. Es decir, si el Fondo determina originalmente que un empleado puede regresar a trabajar, con derecho a recibir tratamiento médico durante horas no laborables, esto es, en "CT", no aplican las protecciones del referido artículo ya que dicha legislación sólo cobija a los empleados que reciben, por orden del Fondo, tratamiento "en descanso"; es decir, dicha protección excluye a los empleados que inician su tratamiento con un diagnóstico de "CT" dado que éstos se encuentran habilitados para trabajar. Rodríguez Rosa v. Méndez & Co., ante. Dicho de otro modo, para activar los remedios y derechos contemplados en el Artículo 5A, es preciso que el Fondo haya originalmente recomendado tratamiento en descanso para poder ausentarse de su trabajo y recibir las protecciones antes mencionadas.[2]

## II

---

[2] Cabe señalar que el patrono puede despedir al obrero por actos acontecidos antes de que sufriera el accidente o enfermedad en el trabajo siempre y cuando dichos actos constituyan justa causa para el despido. Santiago v. Kodak, ante.

A la luz de los pronunciamientos antes esbozados, pasamos a evaluar la controversia ante nos. ¿Tiene derecho a ser reinstalado en su empleo un obrero que solicita <u>oportunamente</u> reinstalación al mismo cuando el Fondo le dio de alta definitiva por su condición orgánica y le autoriza un CT en relación con su condición emocional? <u>Contestamos la interrogante en la afirmativa</u>. Veamos porqué.

El eje central de la Ley de Compensaciones, repetimos, es brindarle un sistema de protección social al obrero lesionado o enfermo para facilitarle su recuperación y retorno a las labores. La Sección 7 del Reglamento Núm. 3966 de 9 de agosto de 1989, mejor conocido como el Reglamento Sobre Derechos De Obreros y Empleados, (Reglamento) dispone: "El obrero o empleado tiene derecho a recibir <u>todo</u> el tratamiento médico que el facultativo del Fondo determine sea necesario. <u>El objetivo primordial de dicho tratamiento es que el obrero o empleado se reintegre a la fuerza trabajadora</u>. Tendrá derecho además, a medicinas, hospitalización, cuando sea necesario." (Énfasis suplido.)

"Es insoslayable la necesidad de protección de su empleo que tiene el que sufre un accidente o enfermedad ocupacional que lo incapacite para trabajar, de manera que su rehabilitación y pronto regreso a sus tareas puedan ser objetivos reales." Opinión Núm. 90-5, Opiniones del Secretario sobre Legislación Protectora del Trabajo de 9 de julio de 1990. Es por ello que, entre los mecanismos de rehabilitación y tratamiento ofrecidos en esta legislación,

el Fondo establece, en primer lugar, el tratamiento "en descanso", que autoriza al empleado a que se ausente de su trabajo, y/o, en segundo término, el CT, que autoriza al obrero a recibir tratamiento mientras trabaja.

El antes citado Reglamento define el C.T.:

> Q – TRATAMIENTO MIENTRAS TRABAJA (CT): cuando el programa terapéutico trazado a un paciente se efectúa mientras éste sigue trabajando, ya que está hábil para hacerlo según el cuadro clínico diagnosticado por el médico.

La transcrita definición nos lleva a la conclusión lógica de que la agencia con "expertise" en la materia, establecida por ley para viabilizar y proveer las protecciones constitucionales a todos los trabajadores en sus talleres de trabajo, tiene autorización específica para determinar los casos en que el trabajador puede continuar trabajando mientras recibe tratamiento médico. En apoyo a dicha conclusión, en Rodríguez Rosa, ante, aseveramos que, dado el hecho que un empleado en CT está habilitado para trabajar, éste no puede acogerse al derecho de reserva de empleo establecido por el antes citado Art. 5A, y ausentarse de su empleo, dado que el cuadro clínico, diagnosticado desde un principio, contempló tratamiento mientras trabaja "CT" y no en descanso.

Ello no implica, sin embargo, que al obrero que originalmente le fue ordenado tratamiento en descanso y que, luego, fue autorizado a trabajar mientras recibe tratamiento (CT) no tenga derecho a ser reinstalado. Son dos situaciones enteramente distintas. En la primera --en la cual

originalmente fue determinado que el obrero podía trabajar mientras recibía tratamiento (CT)-- <u>nunca</u> entraron en vigor las disposiciones del Art. 5A de la Ley. En la segunda --donde <u>originalmente</u> le fue ordenado tratamiento en descanso y, <u>luego</u> fue autorizado a trabajar mientras recibía tratamiento (CT)-- el referido Art. 5A sí entró en vigor originalmente y, por ende, el derecho a ser reinstalado establecido por dicha disposición estatutaria, efectivamente sí aplica.

Al evaluar los requisitos necesarios para la reinstalación efectiva de un empleado a sus labores, forzoso nos resulta concluir que un empleado que es dado de alta definitiva por su condición orgánica, condición por la cual acude al Fondo, y referido en CT por una condición emocional no relacionada con su desempeño laboral[3], tiene derecho a solicitar oportunamente su reinstalación en el empleo ya que el Fondo determinó que éste se encontraba habilitado para trabajar al concederle una alta definitiva con respecto a la condición que le mereció el descanso, esto es, su condición orgánica. El tratamiento en CT por su condición emocional durante horas no laborales no debe lacerarle su derecho a solicitar reinstalación. El hecho de que un empleado sea autorizado a trabajar por el Fondo luego de haber concluido su tratamiento en descanso, al ser dado de alta en CT,

---

[3] Para efectos de la protección bajo el Artículo 5A de la Ley, ante, es impertinente si posteriormente, como ocurrió en el caso de autos, el Fondo determina que el accidente o enfermedad no está relacionado con el trabajo ya que dicha determinación no afecta la reclamación que pueda tener el empleado bajo la Ley. <u>Alvira Cintrón</u> v. <u>SK&F Lab.</u>, 142 D.P.R. 803 (1997).

necesariamente presupone que éste está habilitado para trabajar y puede efectivamente reintegrarse a la fuerza laboral.

Como bien señala el Procurador General del Trabajo Interino del Departamento de Trabajo y Recursos Humanos en la Consulta Número 11056:

> Una vez el obrero cumpla con todos los requisitos que exige el Artículo 5A de la citada Ley Núm. 45 de 1935, el patrono viene obligado, so pena de incurrir en la responsabilidad que el propio Artículo 5A dispone, a reinstalarlo en su empleo sin mayor dilación o excusa. Como se sabe esos requisitos son; (a) que el obrero hubiere sido dado de alta para trabajar; (b) que solicita reinstalación dentro de los quince (15) días siguientes a la fecha en que fue dado de alta; (c) que tal solicitud se haga no más tarde de haber transcurrido doce (12) meses desde la fecha del accidente; (d) que el obrero se encuentre mental u físicamente capacitado para ocupar su empleo; y (e) que el empleo subsista al momento de solicitar su reposición.(Énfasis suplido.)

Como certeramente se señala, además, en dicha consulta:

> Es de presumirse que un obrero en "CT" cumple con este requisito, pues de otro modo no se explica cómo el Fondo le ha dado de alta para trabajar mientras recibe tratamiento. (Énfasis suplido.)

A esos mismos efectos, señala el Lcdo. Ruy Delgado Zayas[4]:

> En vista de los propósitos de la ley y de que en ningún momento habla de alta definitiva sino solamente de "alta", resulta importante señalar que la reserva y obligación de reinstalar es igual para el empleado que le dan de alta definitiva como para el que lo den de alta con tratamiento (C.T.). La letra

---

[4] Apuntes para el Estudio de La Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño, ante, a la pág. 194

de la ley es bien clara y está en armonía con sus propósitos.(Énfasis suplido.)[5]

Es evidente que, en situaciones como la del caso de autos, la autorización en CT del Fondo es una medida que le facilita al trabajador la reintegración al empleo al proveer un remedio alterno de atenderse el padecimiento sin perjudicarlo indebidamente en sus tareas laborales. Claro está, como indicamos en Torres González v. Star Kist Caribe, Inc., ante, el hecho de que un empleado que se encuentre incapacitado o inhabilitado temporalmente por razón de una enfermedad o accidente ocupacional, regrese al trabajo mientras esté en tratamiento bajo el Fondo, o sea, en CT, no tiene el efecto de interrumpir el término de doce meses que establece el Artículo 5A.

En mérito de lo anteriormente expuesto, resolvemos que: a un obrero que ha sufrido un accidente del trabajo, que fue ordenado originalmente por el Fondo a recibir tratamiento en descanso, y que, luego, es dado de alta por el Fondo para trabajar mientras recibe tratamiento (CT), le son aplicables las disposiciones del citado Art. 5A de la Ley de Compensación por Accidentes del Trabajo, siempre y cuando se cumpla con el resto de los requisitos exigidos por dicha disposición

---

[5] El texto claro e inequívoco de un estatuto es la expresión por excelencia de la intención legislativo. Art. 14 del código Civil, 31 L.P.R.A. sec. 201.

Tampoco podemos perder de perspectiva que dado su carácter remedial y especial, la Ley de Compensaciones debe interpretarse a favor del Trabajador. Santiago v. Kodak, ante.

estatutaria; dicho de otra forma, éste obrero tiene derecho a ser reinstalado en su empleo.

En el caso de autos, el Sr. Rivera González cumplió cabalmente con todos los requisitos, a saber: (a) el Fondo le dio de alta y lo autorizó para trabajar; (b) solicitó reinstalación dentro de los quince (15) días siguientes a la fecha en que fue dado de alta; (c) dicha solicitud fue hecha dentro de los doce (12) meses desde la fecha del accidente; (d) se encontraba capacitado para ocupar su empleo, según la determinación de la agencia con pericia en la materia; y (e) al momento de solicitar su reposición, subsistía el empleo. Por ende, le amparaba el derecho de reinstalación garantizado por el antes Art. 5A de la Ley.

Por las razones antes expresadas, procede revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones, devolviéndose el caso al Tribunal de Primera Instancia para procedimientos ulteriores consistentes con lo aquí resuelto.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ventura Rivera González

    Querellante-Peticionario

       vs.                         CC-2001-331       CERTIORARI

Blanco Vélez Stores, Inc.
H/N/C Madison Plaza del
Atlántico

    Querellado-Recurrido

**SENTENCIA**

San Juan, Puerto Rico, a 30 de octubre de 2001

    **Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones, devolviéndose el caso al Tribunal de Primera Instancia para procedimientos ulteriores consistentes con lo aquí resuelto.**

    **Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García no intervino.**

                        **Isabel Llompart Zeno**
                 **Secretaria del Tribunal Supremo**