Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| SILMARIE MÉNDEZ RUIZ<br><br>Apelada<br><br>v.<br><br>TECHNO PLASTIC INDUSTRIES, INC.<br><br>Apelante | KLCE202300295 | Certiorari<br>***Acogido como Apelación***<br>procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Caso Núm.<br>MZ2021CV01096<br><br>Sobre:<br>Daños y otros<br>Ley 80 bajo el Procedimiento Sumario de la Ley 2 |

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Romero García y el Juez Monge Gómez.

**SENTENCIA**

En San Juan, Puerto Rico, a 2 de abril de 2024.

I.

El 19 de agosto de 2021, la Sra. Silmarie Méndez Ruiz presentó *Querella* al amparo del procedimiento sumario laboral[1] contra Techno Plastics Industries Inc., (Techno Plastics), por despido injustificado, discrimen y represalias. Alegó que, debido a un accidente que sufrió en su trabajo el 11 de julio de 2018, ese mismo día visitó la Corporación del Fondo del Seguro del Estado (CFSE) para una evaluación médica. En su visita, se determinó ordenarle descanso hasta el 21 de julio de 2018 y tratamiento médico mientras trabaja (CT).

Alegó que, en la evaluación del 26 de julio de 2018, se determinó tratamiento en descanso hasta el 30 de julio de 2018 y tratamiento mientras trabaja desde el 31 de julio de 2018. Posteriormente, el 21 de noviembre de 2018, se le ordenó

---

[1] Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como la *Ley de Procedimiento Sumario de Reclamaciones Laborales,* 32 LPRA § 3118 *et seq.*

tratamiento en descanso hasta el 30 de noviembre 2018 y tratamiento mientras trabaja desde el 1 de diciembre de 2018. Sostuvo que, se mantuvo recibiendo directrices médicas de la CFSE ordenando descanso y CT hasta el **1 de mayo de 2021**.

El **26 de abril de 2021**, Techno Plastics le envió una carta por correo electrónico notificándole que había sido despedida de su empleo. En la misiva le informó que, en cumplimiento con el Artículo 5-A de la Ley Núm. 45 de 18 de abril de 1935, según emendada, conocida como la *Ley del sistema de Compensaciones por Accidentes del Trabajo,*[2] se le había reservado su empleo por doce (12) meses, pero dicho término había vencido el 6 de julio de 2019. Con ello, Techno Plastics justificó que fuera despedida mientras se encontraba recibiendo tratamiento médico por el accidente que sufrió durante su jornada laboral.

En su *Contestación a Querella* presentada el 13 de septiembre de 2021, Techno Plastics arguyó que la señora Méndez Ruiz no había sido despedida, sino que, caducó el término de los trecientos sesenta (360) días de reserva de empleo que ordena la Ley Núm. 45-1935 y ésta aún se encontraba recibiendo tratamiento con relación al mismo accidente. Ello así, no estaban obligados a continuar reservando por tiempo adicional el empleo de la señora Méndez Ruiz.

Al replicar, la señora Méndez Ruiz arguyó que no estuvo 360 días en descanso y, por lo tanto, aún estaba amparada en la protección de empleo estatutaria. En adición, presentó el historial de tratamiento ante la CFSE para demostrar que se le ordenaba descanso de manera esporádica y, en ocasiones estaba en CT. Por ello, alegó que el término de 360 días había estado sujeto a interrupción.

Concluido el descubrimiento de prueba, el 9 de noviembre de 2022, Techno Plastics presentó *Moción Solicitando que se Dicte*

---

[2] 11 LPRA § 7.

*Sentencia Sumaria.* El 13 de enero de 2023, la señora Méndez Ruiz presentó *Moción en Oposición a Sentencia Sumaria.* El 7 de marzo de 2023, notificada el 13, el Tribunal de Primera Instancia dictó *Sentencia Sumaria Parcial.* Concluyó que el despido de la señora Méndez Ruiz fue injustificado según la Ley Núm. 80-1976. Expuso que, fue arbitrario y caprichoso al incumplir con las disposiciones del Art. 5-A de la Ley Núm. 45-1935.[3]

Inconforme, el 23 de marzo de 2023 Techno Plastics acudió ante nos mediante *Petición de Certiorari.* Aduce:

**Primer Error:**
Erró el Tribunal de Primera Instancia al determinar que la Ley de Transformación y Flexibilidad Laboral, no es de aplicación a los hechos del caso los cuales están regulados por una Ley Especial, según ésta por el Artículo 5(a) de la Ley 45 de 1935 y que además la Ley de Transformación y Flexibilidad Laboral de 2017, no es de aplicación a los hechos pues la querellante comenzó a trabajar para la querellada en el 2007.

**Segundo Error:**
Erró el Tribunal de Primera Instancia al determinar incontrovertidos hechos distintos a los presentados en la Moción de Sentencia Sumaria y admitidos por la oposición presentada por la parte querellante.

**Tercer Error:**
Erró el Tribunal de Primera Instancia al determinar que la parte querellada no cumplió con las disposiciones del Artículo 5-A de la Ley 45 de 1935, para poder cesantear correctamente a la querellante por haberla mantenido trabajando por un período que excede lo que dispone la obligación de reserva.

**Cuarto Error:**
Erró el Tribunal de Primera Instancia al no seguir el mandato de la jurisprudencia precedente que interpreta el Artículo 5-A de la Ley 45 de 1935, y en su lugar adoptar como derecho aplicable una opinión disidente que fue expresamente rechazada por la mayoría de nuestro Tribunal Supremo, en clara violación al principio de Stare Decisis.

**Quinto Error:**
En la alternativa, de sostenerse como válida esta distinta interpretación realizada por el TPI en cuanto a

---

[3] En su *sentencia* el Foro primario expresó que se trataba de una sentencia sumaria parcial, toda vez quedaba pendiente la concesión de la partida por concepto de daños y perjuicios que sufrió la señora Méndez Ruiz reconocida en el Art. 5-A de la Ley Núm. 45-1935.

la aplicación del Artículo 5-A, es improcedente en derecho aplicar la misma de manera retroactiva, afectando a la parte querellada, que ha actuado conforme al estado de derecho que se encontraba vigente al momento de los hechos.

**Sexto Error:**
Erró el TPI al determinar que la parte apelante debe resarcir a la parte apelada querellante en daños y a la vez pagar la mesada conforme a la Ley 80, cuando constituye tal condena un doble castigo contra el patrono por los mismos hechos.

El 2 de mayo de 2023, emitimos *Resolución* denegando su expedición tras considerar el mismo como un auto de *Certiorari*. Insatisfecho con nuestro proceder, el 22 de mayo de 2023, Techno Plastics acudió al Tribunal Supremo de Puerto Rico mediante *Petición de Certiorari*. Posteriormente, el 30 de noviembre de 2023, el Tribunal Supremo nos devolvió el recurso para que lo atendiéramos en los méritos, tras resolver que se trataba de una Apelación propiamente.

Ello así, el 11 de enero de 2024, emitimos *Resolución* concediéndole término de treinta (30) días a la señora Méndez Ruiz para que presentara su alegato en oposición. El 20 de febrero de 2024 compareció según ordenado. Contando con el beneficio de la comparecencia de las partes, procedemos a resolver los méritos de la controversia.

II.

El mecanismo de sentencia sumaria provisto por la Regla 36 de Procedimiento Civil, permite la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales, es decir, de aquellos hechos que puedan afectar el resultado de la reclamación bajo el derecho sustantivo aplicable.[4] De manera que, cuando los documentos no controvertidos que acompañan la moción de sentencia sumaria

---

[4] 32 LPRA Ap. V, R. 36; SLG *Fernández-Bernal* v. *RAD-MAN San Juan*, 208 DPR 310 (2021); *Roldán Flores* v. *M. Cuebas* et al.*,* 199 DPR 664 (2018); *Bobé* et al. v. *UBS Financial Services*, 198 DPR 6 (2017).

demuestran que no hay una controversia de hechos esenciales y pertinentes, se prescinde de la celebración de un juicio y por lo tanto, únicamente resta aplicar el Derecho.[5]

Para prevalecer por la vía sumaria, la parte promovente deberá presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción.[6] Con ese fin, deberá desglosar los hechos que alega no están en controversia con referencia específica a la prueba admisible y sustancial que lo sustenta.[7] Por el contrario, ante una solicitud de sentencia sumaria el promovido no deberá tomar una actitud pasiva ni descansar solamente en sus alegaciones. Este debe controvertir la prueba presentada por el promovente, mediante contestación detallada y específica sobre aquellos hechos pertinentes acompañada de prueba admisible, y así demostrar que existe una controversia real y sustancial que debe dilucidarse en un juicio.[8]

Si el promovido se cruza de brazos, se expone a que dicten sentencia sumaria en su contra sin la oportunidad de un juicio en su fondo.[9] Ahora bien, si el promovido no contraviene la prueba presentada en la solicitud de sentencia sumaria, no necesariamente significará que procede automáticamente la concesión de la sentencia.[10] Esto es así porque la sentencia sumaria puede dictarse a favor o en contra del promovente, según proceda en Derecho.[11] Es decir, se debe cumplir con el criterio rector de que los hechos incontrovertidos y la evidencia de autos demuestren que no hay

---

[5] *Rosado Reyes* v. *Global Healthcare*, 205 DPR 796 (2020); *León Torres* v. *Rivera Lebrón*, 204 DPR 20 (2020); *Meléndez González* et al. v. *M. Cuebas*, 193 DPR 100 (2015).
[6] *Ramos Pérez* v. *Univisión*, 178 DPR 200 (2010).
[7] *León*, 204 DPR, págs. 41-42; *Roldán*, 199 DPR, pág. 676.
[8] *Abrams Rivera* v. *ELA*, 178 DPR 914, 933 (2010); *Piovanetti* v. *S.L.G. Touma, S.L.G. Tirado*, 178 DPR 745, 774 (2010).
[9] *León*, 204 DPR, págs. 41-42.
[10] *SLG Fernández-Bernal*, 208 DPR; *Piovanetti*, 178 DPR, pág. 174.
[11] *Rosado*, 205 DPR, págs. 808-809; *Audiovisual Lang.* v. *Sist. Est. Natal Hnos.*, 144 DPR 563 (1997).

controversia real sustancial en cuanto a algún hecho esencial y pertinente.[12]

Como Tribunal de Apelaciones estamos en la misma posición que el Tribunal de Primera Instancia al momento de revisar una solicitud de sentencia sumaria. Por ello, debemos revisar que tanto la moción de sentencia sumaria como la oposición cumplan con la Regla 36 de Procedimiento Civil.[13] En esa tarea, utilizamos los mismos criterios que el ordenamiento le impone al Foro primario para analizar la procedencia de la moción de sentencia sumaria. No podemos considerar evidencia que las partes no presentaron en el tribunal *a quo*. Las partes que recurren ante nos, no pueden litigar asuntos que no fueron traídos a la atención del Foro de instancia. En vista a que nuestra revisión es *de novo*, debemos examinar el expediente de la manera más favorable hacia la parte que se opuso a la moción de sentencia, llevando a cabo todas las inferencias permisibles a su favor.

A.

La Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada,[14] es una legislación de carácter remedial que consagra garantías y beneficios al obrero que haya sufrido un accidente o enfermedad ocupacional en el escenario del trabajo.[15]

Dicho estatuto requiere que el obrero haya padecido un accidente en el empleo para gozar de los derechos allí establecidos, siempre y cuando la condición o lesión del obrero sobrevenga como resultado de un acto o función inherente al trabajo, que haya ocurrido en el curso de este y que resulte como consecuencia del mismo.[16] De incumplir con los criterios antes expuestos, la

---

[12] *Rosado,* 205 DPR, pág. 809.
[13] *Meléndez,* 193 DPR, págs. 118-119.
[14] 11 LPRA § 1 *et seq.*
[15] *Rivera* v. *Blanco Vélez Stores,* 155 DPR 460, 466 (2001).
[16] 11 LPRA § 2.

condición o accidente del obrero no puede catalogarse como ocupacional y por tanto no es compensable bajo la mencionada Ley.[17] En lo aquí pertinente, el Art. 5-A de la referida Ley Núm. 45, dispone lo siguiente:

> En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:
>
> 1. **Que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta o fuere autorizado a trabajar con derecho a tratamiento**, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce (12) meses desde la fecha del accidente, o seis (6) meses en el caso de patrono con quince (15) empleados o menos a la fecha del accidente;
>
> 2. Que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición, y
>
> 3. Que dicho empleo subsista en el momento en que el obrero o empelado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.)
>
> Si el patrono no cumpliere con las disposiciones de esta sección vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o de daños en corte por acción ordinaria o mediante el

---

[17] *Díaz Ortiz* v. *F.S.E.,* 126 DPR 32 (1990).

procedimiento para reclamación de salarios, establecido en las secs. 3128 a 3132 del Título 32.[18]

La precitada disposición, provee una reserva de empleo de doce (12) meses a favor del obrero que ve reducida su capacidad para desempeñarse en su empleo a consecuencia del accidente en el trabajo. Este término de doce (12) meses equivale a trescientos sesenta (360) días, contados desde la fecha del accidente.[19] En síntesis, esta legislación busca armonizar los derechos tanto del obrero como del patrono, en la medida en que le garantiza al empleado lesionado ciertas salvaguardas dentro de su trabajo, y protege, por su parte, los intereses pecuniarios del patrono.[20] De esta forma, también pretende prevenir la actuación injustificada en contra del obrero lesionado en el ámbito laboral, sin imponerle una carga irrazonable al patrono.

Despedir a un empleado por razón de su incapacidad física y/o mental para realizar las funciones de su puesto, o para asistir regularmente a su empleo, no se justifica en los casos en que el obrero se incapacita temporalmente por razón de un accidente o una enfermedad ocupacional.[21] A través de la Ley de Compensaciones por Accidentes del Trabajo se viabiliza una herramienta que reconoce el derecho constitucional de los trabajadores en Puerto Rico a recibir protección contra riesgos en su salud e integridad personal.[22] Esto a través de un sistema de seguridad social de lesiones en el empleo.[23] Conforme la Ley, el patrono está obligado a reservarle el empleo a un obrero que sufre inhabilidad para trabajar, consecuencia de un accidente o enfermedad relacionada al trabajo. El empleo reservado es aquel que el obrero tenía al momento de ocurrir el accidente o enfermedad. La reserva del empleo tiene un

---

[18] 11 LPRA § 7. (Énfasis nuestro).
[19] *Torres* v. *Star Kist Caribe, Inc.,* 134 DPR 1024 (1994), nota al calce núm. 4.
[20] *Santos et. al.,* v. *Lederle,* 153 DPR 812 (2001).
[21] *Cuevas* v. *Ethicon Div. of J&J Prof. Co.,* 148 DPR 839, 845 (1999).
[22] *Torres* v. *Star Kist Caribe, Inc.,* 134 DPR 1024, 1028-1029 (1994).
[23] 11 LPRA § 1a.

término de caducidad de doce meses, o 360 días a partir de ese mismo momento.[24] Este periodo transcurre desde la fecha del accidente y no desde que el Fondo del Seguro ordene el descanso.[25] La solicitud de reinstalación tiene que hacerse dentro de los doce (12) meses a partir de la fecha cuando ocurrió el accidente o la enfermedad laboral. Luego de transcurrido este término, el patrono puede despedir al empleado, si éste aún no ha sido dado de alta del F.S.E. La legislatura estimó razonable dicho período para proteger el derecho del trabajador a retener su empleo, estableciendo así un balance entre los derechos del patrono y los del empleado lesionado.[26] "Ésta no tuvo la intención de establecer una obligación al patrono de reservar el empleo del obrero indefinidamente."[27] Si el Fondo lo da de alta, pero sufre una recaída, sin mediar intervención de causa ajena al accidente o enfermedad inicial, los doce meses se computarán desde el accidente original.[28] La reinstalación estará sujeta, entre otras cosas, a:

> …(1) Que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta o fuere autorizado a trabajar con derecho a tratamiento, y **siempre y cuando que dicho requerimiento no se haga después de transcurridos doce (12) meses desde la fecha del accidente**, o seis (6) meses en el caso de patronos con quince (15) empleados o menos a la fecha del accidente;

> (2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición, y (3) que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición…[29]

El Tribunal Supremo ha resuelto que el Artículo 5-A que establece el término de doce (12) meses de reserva de empleo es uno

---

[24] 11 LPRA § 7; *Rivera* v. *Blanco*, 155 DPR 460, 468-469 (2001).
[25] *Cuevas* v. *Ethicon Div. of J&J Prof. Co.*, supra, págs. 850-851.
[26] *García* v. *Darex P.R.Inc., supra.*
[27] *Torres* v. *Star Kist Caribe, Inc.*, supra, pág. 1033.
[28] *Carrión Lamoutte* v. *Compañía de Turismo*, 130 DPR 70, 79 (1992).
[29] 11 LPRA § 7; *WhittenBurg* v. *Col. Ntra. Sra. Del Carmen,* 182 DPR 937, 970-972 (2011); *Rivera* v. *Blanco,* supra, pág. 469; *García* v. *Darex P.R., Inc.,* 148 DPR 364 (1999). (Énfasis suplido)

de caducidad, el cual no es susceptible de ser interrumpido.[30] Incluso, tampoco permite interrupción por motivo de una gestión apelativa ante la Comisión Industrial.[31] El efecto extintivo del mismo tiene como consecuencia que la inacción del obrero lesionado por dicho periodo, implica la pérdida del derecho. Una vez transcurrido el término, el patrono está legitimado para despedir al obrero aun cuando este no hubiere sido dado de alta por el Fondo.[32]

"[S]i el empleado no solicita reinstalación dentro de los términos contemplados en la Ley de Compensaciones y el patrono lo despide, la cesantía no configura un despido injustificado ya que la propia ley lo contempla como una prerrogativa del patrono ante la ausencia de una oportuna solicitud de reinstalación al puesto que ocupaba el obrero lesionado".[33] La Asamblea Legislativa no tuvo la intención de establecer una obligación al patrono de reservar el empleo al obrero de forma indefinida.[34]

Por su parte, la solicitud de reinstalación constituye una obligación del obrero accidentado o incapacitado cuando están presentes las circunstancias que justifican la existencia de ese derecho. El interés detrás de la obligación del obrero al solicitar la reinstalación es proteger la tenencia de empleo del obrero accidentado o incapacitado y al mismo tiempo, establecer una fecha cierta como límite de responsabilidad del patrono de reservar el empleo al obrero, de modo que, vencido ese término, el patrono queda libre de ocupar el puesto con otro empleado.[35]

### III.

En la primera parte de su primer señalamiento de error, *Techno Plastics* alega que el Tribunal de Primera Instancia se

---

[30] *Cuevas* v. *Ethicon Div. J&J, supra.*
[31] *Alvira* v. *SK & F Laboratories Co.*, 142 DPR 803, 814 (1997).
[32] *Rivera* v. *Blanco Vélez Stores*, 155 DPR 460, 469 (2001), citando *a Santos et al.* v. *Lederle*, 153 DPR 812 (2001).
[33] *Rivera* v. *Blanco Vélez Stores, supra*, pág *469; García* v. *Darex P.R., Inc., supra.*
[34] *Torres* v. *Star Kist Caribe, Inc., supra*, pág. 1033. *García* v. *Darex P.R., Inc., supra,* pág. 379
[35] *Rivera* v. *Ins. Wire, Prods., Corp., supra*, pág. 124.

equivocó al no aplicar a los hechos del caso, el Artículo 2.16 de la Ley de Transformación y Flexibilidad Laboral, Ley Núm. 4-2017. El Foro *a quo* se basó en que dicha disposición, aprobada en el 2017, no aplica retroactivamente a los hechos del caso, toda vez que la señora Méndez Ruiz comenzó a trabajar para *Techno Plastics* en el año 2007. Veamos.

El aludido Artículo 2.16 establece que "el contrato de empleo, a menos que se disponga de otra manera en una ley especial, se extinguirá por, entre otras cosas, muerte o incapacidad del empleado más allá del periodo de reserva de empleo dispuesto en una ley especial".[36] Resulta claro que la aplicabilidad de este Artículo depende o está condicionado a que cualquier otra ley especial disponga en contrario. En otras palabras, sus disposiciones se activan, ante la ausencia de alguna ley especial que regule la materia.

En este caso la señora Méndez Ruiz ha basado su reclamo en las leyes Núm. 45 y Núm. 44, sobre el Sistema de Compensación por Accidentes del Trabajo y de la Corporación del Fondo del Seguro del Estado, respectivamente. Ambas son leyes especiales prexistentes a la vigencia de la Ley Núm. 4-2017, que, según su propio Art. 2.16, descartan automáticamente su aplicación.

Aun si, para fines argumentativos, consideráramos al aludido Art. 2.16, tampoco sus enunciados disponen de la controversia. Nos explicamos.

Como hemos visto, según este Art. 2.16, un contrato de empleo se extingue por, entre otras cosas, muerte o incapacidad del empleado más allá del periodo de reserva de empleo dispuesto en una ley especial. En el caso de autos, la inaplicabilidad de este estatuto es más que evidente, debido a que la razón expuesta por *Techno Plastics* para despedir a la señora Méndez Ruiz fue que el

---

[36] 29 LPRA § 122o.

período de doce (12) meses de reserva de empleo había expirado. Expresó, que, "[d]esde el día 11 de julio de 2018 usted está reportada a la Corporación del Fondo del Seguro del Estado. Techno-Plastics Industries, cumpliendo con lo establecido en el Artículo 5-A bajo reglamentación de dicha Corporación, le reservó el trabajo por 12 meses (360 días), el cual culminó el 6 de julio de 2019".

Tampoco *Techno Plastics* no pudo demostrar que, para la fecha del despido, la señora Méndez Ruiz se encontraba incapacitada. Por el contrario, quedó demostrado que esta se encontraba recibiendo tratamiento médico por descanso y en revisión. Ello implica, que el Fondo del Seguro del Estado la mantenía como parte de la fuerza laboral. De haberla considerado incapacitada, entonces no le hubiera seguido ofreciendo el tratamiento dirigido a que esta reanudara sus labores en el empleo. En fin, no siendo la muerte de la señora la razón para su despido, tampoco su incapacidad podía serlo.

IV.

En su segundo señalamiento de error, *Techno Plastics* alega que el Tribunal de Primera Instancia erró al determinar incontrovertidos hechos distintos a los propuestos en la *Moción de Sentencia Sumaria* y admitidos por la oposición presentada por la parte Querellante-apelada. Examinemos su reclamo.

A poco revisamos la *Moción Solicitando que se Dicte Sentencia Sumaria* presentada el 9 de noviembre de 2022 por *Techno Plastics*, estos incluyeron como hechos incontrovertidos los siguientes:

> 1. La querellante comenzó a trabajar el 14 de marzo de 2007 para TECHNO PLASTICS INDUSTRIES, INC., como operadora de máquina.
> 2. La primera vez que la querellante asistió al Fondo del Seguro del Estado (en adelante FSE) fue el 11 de julio de 2018.
> 3. La querellante alegó en su deposición que sufrió un accidente del trabajo ese mismo día, 11 de julio de 2018, lo cual motivó la referida visita al Fondo del Seguro del Estado.
> 4. Ese mismo día se examinó a la Sra. Méndez Ruíz, tomándose la decisión de ordenar descanso hasta

el 21 de julio, y comenzar tratamiento médico mientras trabaja (CT). Se le asignó el número de caso 20184843008.

5. Posterior a esto la querellante regresó en las siguientes fechas para ser evaluada por el FSE en el caso número 20184843008, siendo las determinaciones de tratamiento las siguientes:

a. 26 de julio de 2018, tratamiento en descanso hasta el 30 de julio, y tratamiento mientras trabaja desde el 31 de julio de 2018.

b. 21 de noviembre de 2018, tratamiento en descanso hasta el 30 de noviembre, y tratamiento mientras trabaja desde el 1 de diciembre de 2018.

c. 25 de enero de 2019, tratamiento en descanso hasta el 27 de enero, y tratamiento mientras trabaja desde el 28 de enero de 2019.

d. 10 de febrero de 2021, tratamiento en descanso hasta el 19 de febrero, y tratamiento mientras trabaja desde el 20 de febrero de 2021.

e. 19 de febrero de 2021, tratamiento en descanso hasta el 28 de febrero, y tratamiento mientras trabaja desde el 1 de marzo de 2021.

f. 3 de marzo de 2021, tratamiento en descanso hasta el 12 de marzo, y tratamiento mientras trabaja desde el 13 de marzo de 2021.

g. 13 de marzo de 2021, tratamiento en descanso hasta el 22 de marzo, y tratamiento mientas trabaja desde el 23 de marzo de 2021.

h. 12 de abril de 2021, tratamiento en descanso hasta el 21 de abril, y tratamiento mientras trabaja desde el 22 de abril de 2021.

i. 22 de abril de 2021, tratamiento en descanso hasta el 1 de mayo, y tratamiento mientras trabaja desde el 2 de mayo de 2021.

Como cuestión de realidad, la carta de despido que entregó *Techno Plastics* a la señora Méndez Ruiz,[37] expresamente consignó: "[d]esde el día 11 de julio de 2018 usted está reportada a la Corporación del Fondo del Seguro del Estado. *Techno-Plastics* Industries, cumpliendo con lo establecido en el Artículo 5-A bajo reglamentación de dicha Corporación, le reservó el trabajo por 12 meses (360 días), el cual culminó el 6 de julio de 2019". De manera que, según *Techno Plastics*, la señora Méndez Ruiz comenzó a

---

[37] Véase: Apéndice III, Exhibit 13 del Recurso de Apelación.

trabajar el 28 de enero de 2019, mientras recibía tratamiento del Fondo por lo que se conoce como CT y se mantuvo trabajando hasta el 10 de febrero de 2021 cuando nuevamente el Fondo le ordenó descanso. Es decir, quedo probado, a instancias del propio patrono querellado, que la señora Méndez Ruiz se encontraba en efecto trabajando el día el 6 de julio de 2019, fecha en que se venció el término de trescientos sesenta (360) días de reserva de empleo que dispone el Artículo 5-A de la Ley Núm. 45-1935. También, que ésta trabajó ininterrumpidamente desde el 28 de enero de 2019 hasta el 10 de febrero de 2021.

Evidentemente, *Techno Plastics* conocía que el periodo de trescientos sesenta (360) días de reserva de empleo había vencido el 6 de julio de 2019, casi veintiún (21) meses antes de la fecha del despido, esto es, el 26 de abril de 2021. Para la fecha en que vencieron los trescientos sesenta (360) días de la ocurrencia del accidente, la señora Méndez Ruiz se encontraba trabajando para *Techno Plastics* debidamente autorizada por el Fondo del Seguro del Estado. De hecho, la señora Méndez Ruiz trabajó ininterrumpidamente desde el 28 de enero de 2019 al 10 de febrero de 2021. Fue el 10 de febrero de 2021 que la señora Méndez Ruiz requirió nuevamente de tratamiento del Fondo con descanso.

El 23 de marzo de 2021 la señora Méndez Ruiz se reintegra a trabajar con tratamiento por orden del Fondo. Se mantuvo trabajando hasta el 12 de abril de 2021 cuando se reportó nuevamente al Fondo quien emitió una orden de descanso bajo tratamiento hasta el 2 de mayo de 2021. Fue durante este periodo que *Techno Plastics* emitió la carta de despido el 26 de abril de 2021. El error alegado no se cometió.

V.

En cuanto al tercer y cuarto señalamiento de error, para *Techno Plastics*, el Tribunal de Primera Instancia erró al determinar

que no cumplió con las disposiciones del Artículos 5-A de la Ley Núm. 45-1935, para poder cesantear correctamente a la señora Méndez Ruiz por haberla mantenido trabajando por un periodo que excede lo que dispone la obligación de reserva. Añade que, igual incidió dicho Foro primario al no seguir los precedentes interpretativos del Articulo 5-A de la Ley 45-1935. No le asiste la razón.

Como previamente hemos discutido, el dictamen recurrido se fundamentó en la propia disposición legal del Artículo 5-A de la Ley 45 de 1935.[38] Este dispone textualmente:

Artículo 5-A. -Reinstalación Después de Incapacidad.

En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de esta Ley, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:
(1) Que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta o fuere autorizado a trabajar con derecho a tratamiento, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce (12) meses desde la fecha del accidente, o seis (6) meses en el caso de patronos con quince (15) empleados o menos a la fecha del accidente;
(2) que el obrero o empleado esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono su reposición, y
(3) que dicho empleo subsista en el momento en que el obrero o empleado solicite su reposición. (Se entenderá que el empleo subsiste cuando el mismo está vacante o lo ocupe otro obrero o empleado. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro obrero o empleado dentro de los treinta días siguientes a la fecha en que se hizo el requerimiento de reposición.)
Si el patrono no cumpliere con las disposiciones de este artículo vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o de daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en la Ley Núm. 2 de 17 de octubre de 1961.

---

[38] 11 LPRA § 7.

*Techno Plastics* no ejerció su prerrogativa de despedir a la señora Méndez Ruiz al momento en que se cumplieron los trescientos sesenta (360) días de la reserva. A esa fecha del 6 de julio de 2019, esta efectuaba sus labores ininterrumpidamente hasta el 10 de febrero de 2021. Nada justificaba su despido bajo el Artículo 5-A de la Ley de Compensación por Accidente del Trabajo para la fecha del 26 de abril de 2021. No erró el Tribunal de Primera Instancia.

En el sexto señalamiento de error, *Techno Plastics* imputa al foro *a quo* equivocarse al imponerle el resarcimiento de daños aparte de la mesada conforme a la Ley Núm. 80-1976. Arguye que ello constituye un doble castigo contra el patrono por los mismos hechos. Veamos.

La Ley 45, supra, concede al empleado el siguiente remedio:

> "Si el patrono no cumpliere con las disposiciones de este artículo vendrá obligado a pagar al obrero o empleado o a sus beneficiarios los salarios que dicho obrero o empleado hubiere devengado de haber sido reinstalado, además le responderá de todos los daños y perjuicios que le haya ocasionado. El obrero o empleado, o sus beneficiarios, podrán instar y tramitar la correspondiente reclamación de reinstalación y/o de daños en corte por acción ordinaria o mediante el procedimiento para reclamación de salarios, establecido en la Ley Núm. 2 de 17 de octubre de 1961 (32 LPRA § 3118 a 3132)".

En este caso, además de determinar que el despido de la señora Méndez Ruiz fue injustificado, el Tribunal de Primera Instancia concluyó que también se había violado la Ley 45, supra. Sin embargo, la Ley 45 dispone que se le pague al empleado los salarios que dicho obrero o empleado hubiere devengado hasta el momento de su reinstalación, más los daños que el despido le haya ocasionado. De manera que, la cuantía por pérdida de ingresos se acumula cada mes que la señora Méndez Ruiz no es reinstalada en su empleo. Ello así, resultaría improcedente el pago de la mesada.

VI.

Por lo antes expuesto, se *confirma* la *Sentencia Sumaria Parcial* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones