Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I - ESPECIAL

| | | |
|---|---|---|
| ASOCIACIÓN DE INDUSTRIALES, ET ALS<br><br>APELANTES<br><br>v<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO, ET ALS<br><br>APELADOS | TA2025AP00130 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2024CV01481<br><br>Sobre: Sentencia Declaratoria; Daños y Perjuicios; Acción De Clase |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

# SENTENCIA

En San Juan, Puerto Rico, a 28 de agosto de 2025.

## I.

El 15 de julio de 2025, la Asociación de Industriales de Puerto Rico, la Asociación de Restaurantes de Puerto Rico, la Cámara de Comercio de Puerto Rico, la Cámara de Comercio Industria y Distribución de Alimentos de Puerto Rico, Corp., CIMAFER, Inc., Cidrines Ashford LLC, y Sobao to Multiply LLC (en conjunto, parte apelante) presentaron digitalmente un recurso de *Apelación* en el que nos solicitaron que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario) el 10 de abril de 2025, notificada y archivada digitalmente en autos el 11 de abril de 2025.[1] Mediante dicho dictamen, el TPI declaró Ha Lugar la *Moción de Desestimación de la Segunda Demanda Enmendada* presentada por la Corporación del Fondo del Seguro del Estado y su Administrador, Noé Marcano Rivera (en

---

[1] Véase la Entrada Núm. 71 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Caso del TPI (SUMAC-TPI).

conjunto, CFSE o parte apelada), y, consecuentemente, desestimó la *Segunda Demanda Enmendada.*

El 18 de julio de 2025, emitimos una *Resolución* en la que concedimos a la parte apelada hasta el 14 de agosto de 2025 para que presentara su alegato en oposición.

El 12 de agosto de 2025, la parte apelada presentó un *Alegato de la parte apelada* en el que solicitó que confirmemos la *Sentencia* apelada.

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes a la atención de la petición de apelación.

**II.**

El caso de marras tuvo su génesis el 12 de febrero de 2024, cuando la parte apelante presentó en contra de la CFSE un recurso de *mandamus*, en conjunto con otras causas de acción, por alegadas violaciones a la *Ley del Sistema de Compensaciones por Accidentes del Trabajo*, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 LPRA sec. 1 *et seq.* (Ley Núm. 45).[2] Posteriormente, el 15 de febrero de 2024, la parte apelante presentó una *Primera Demanda Enmendada Petición de Mandamus y Daños (Acción de clase)* para sustituir al pasado administrador de la CFSE por el actual, el señor Noé Marcano Rivera.[3]

Tras varios trámites procesales atinentes al recurso extraordinario de *mandamus*, 18 de marzo de 2024, el TPI dictó una *Sentencia Parcial* mediante la cual desestimó la solicitud de dicho remedio y refirió el resto de las causas de acción de sentencia declaratoria, daños, enriquecimiento injusto y cobro de lo indebido al trámite civil ordinario.[4]

---

[2] Véase la Entrada núm. 1 del expediente digital del caso en SUMAC-TPI.
[3] Véase la Entrada núm. 15 del expediente digital del caso en SUMAC-TPI.
[4] Véase la Entrada núm. 28 del expediente digital del caso en SUMAC-TPI.

Inconforme, el 2 de abril de 2025, la parte apelante presentó una *Moción de Reconsideración* en la que alegó que en este caso se configuraban las excepciones para que se expidiera el *mandamus* solicitado y se le exima del requisito de interpelación previa por lo que suplicó que se dejara sin efecto la *Sentencia Parcial.*[5] El 3 de abril de 2024, sin la posición de la otra parte, el TPI emitió una *Resolución* en la que declaró No Ha Lugar a la reconsideración.[6]

Luego de la reasignación del caso a una sala de procedimiento civil ordinario y de otros trámites procesales innecesarios de pormenorizar, el 18 de junio de 2024, la parte apelante presentó una *Segunda Demanda Enmendada (Acción de clase).*[7] En síntesis, alegó que la CFSE ha incumplido con el deber de utilizar servicios actuariales para la revisión y fijación de los tipos tarifarios, la determinación de la reserva y para otros propósitos legítimos según contemplados en el Artículo 1-B(4)(j) de la Ley Núm. 45, *supra,* sec. 1b(4)(j). Asimismo, adujo que el CFSE ha incumplido con el deber de fijar las primas más bajas posibles para establecer un fondo solvente y crear un sobrante razonable en virtud del Artículo 21 de la Ley Núm. 45, *supra,* sec. 24. Así las cosas, argumentó que la CFSE ha actuado de forma ilegal y *ultra vires* al fijarlas primas para el sistema de compensación de los trabajadores que administra, sin llevar a cabo estudios actuariales que la sustenten, imponiendo tarifas irrazonables y generando sobrantes en exceso. Por ello, sostuvo que la CFSE se ha enriquecido injustamente a costa de los patronos en Puerto Rico, quienes alegadamente han pagado sumas excesivamente altas e irrazonables, que no guardan relación alguna con estudios actuariales ni con los riesgos de accidente y beneficios que provee el sistema de compensación.

---

[5] Véase la Entrada núm. 30 del expediente digital del caso en SUMAC-TPI.
[6] Véase la Entrada núm. 32 del expediente digital del caso en SUMAC-TPI.
[7] Véase la Entrada núm. 55 del expediente digital del caso en SUMAC-TPI.

A su vez, manifestó que se dio un cobro de lo indebido ya que, alegadamente, los patronos hicieron un pago con el propósito de extinguir la obligación de pagar la prima; que el pago no tenía justa causa porque no existía obligación jurídica de pagar al CFSE ya que las obligaciones existentes eran por una suma menor a la pagada; y, que el pago de la prima fue hecho por error de hecho y derecho y no por liberalidad.

También, alegó que el Manual de Clasificaciones en el que se establecen las cubiertas y primas aplicables a los patronos constituyen un reglamento legislativo de aplicación general cuya adopción debe ceñirse al proceso de reglamentación establecido en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.* (LPAU), pero que la CFSE, al aprobarlo, ha ignorado dicha reglamentación.

En virtud de dichas alegaciones, la parte apelante solicitó que se dicte una sentencia declaratoria estableciendo que la CFSE actuó de manera ilegal, inconstitucional y *ultra vires* al establecer y cobrar primas sin cumplir con el procedimiento establecido en su ley orgánica y sin contar con estudios actuariales que las sustenten y justifiquen, cobrando sumas irrazonablemente altas, con propósitos que no están relacionados a la Administración del Sistema de Compensación por Accidente en el Trabajo e incumpliendo con la inversión de sus fondos; a los efectos de que la CFSE ha fijado, impuesto y cobrado primas de manera ilegal y *ultra vires* al aprobar normas de aplicación general sobre las clasificaciones y cobro de primas sin haber cumplido con los procesos de reglamentación exigidos por la LPAU, *supra*, violando así el debido proceso de ley y que, por las mismas razones, las clasificaciones y las fórmulas para el cómputo de las primas son nulas.

Con relación al alegado enriquecimiento injusto y cobro de lo indebido la parte apelante solicitó la devolución de las cantidades pagadas en exceso y, por último, una suma por concepto de honorarios de abogado. Mencionó además que presentó la demanda como una acción de clase.

Ese mismo día, el TPI emitió una *Resolución* en la que autorizó la *Segunda Demanda Enmendada* y concedió un término a la parte demandada para presentar su alegación responsiva o una nueva moción de desestimación.[8]

El 18 de julio de 2024, la CFSE presentó una *Moción de Desestimación de la Segunda Demanda Enmendada*.[9] En síntesis, alegó que la parte apelante no agotó los remedios administrativos que provee la CFSE ante la Comisión Industrial, quien tiene la jurisdicción exclusiva para la revisión de primas según lo establecido en el Artículo 22 de la Ley Núm. 45, *supra*, sec. 25. Arguyó que la parte apelante no cuestionó la revisión de las primas fijadas en los pasados quince (15) años por lo que sostuvo que procede la desestimación de todas las causas de acción por falta de jurisdicción. Adujo además que, ante las alegaciones de violación de derechos constitucionales, la precitada ley otorga garantías procesales en cumplimiento del debido proceso de ley por lo que no se justifica la desviación del cauce administrativo. Asimismo, manifestó que la inversión de fondos cuestionada por la parte apelante encuentra justificación en las leyes aprobadas precisamente para ello, por lo que sería improcedente emitir una sentencia declaratoria en torno a ese planteamiento.

Por otra parte, aludió a que la LPAU, *supra*, dispone que los documentos guías no están sujetos al proceso reglamentario y que,

---

[8] Véase la Entrada núm. 57 del expediente digital del caso en SUMAC-TPI. Notificada y archivada digitalmente en autos el 20 de junio de 2024.
[9] Véase la Entrada núm. 58 del expediente digital del caso en SUMAC-TPI.

por tanto, como el Manual de Clasificaciones es un documento guía no le son de aplicación tales disposiciones para su promulgación.

En cuanto a las demás causas de acción, adujo que no proceden como cuestión de derecho porque la propia ley orgánica de la CFSE prohíbe expresamente la devolución del exceso que se haya pagado en primas o contribuciones.

Por su parte, el 7 de agosto de 2024, la parte apelante presentó una *Oposición a Moción de Desestimación de la Segunda Demanda Enmendada* en la que adujo que su reclamo alega adecuadamente hechos que justifican la concesión de un remedio y que la *Moción de Desestimación de la Segunda Demanda Enmendada* debe considerarse como una moción de sentencia sumaria por incluir evidencia extrínseca a las alegaciones de la parte apelante.[10] En síntesis, alegó que esbozó varias reclamaciones que son estrictamente de derecho y constitucionales que no requieren de la pericia de la Comisión Industrial para su resolución. Por ello, sostuvo que se trata de un asunto de jurisdicción primaria y no de agotamiento de remedios administrativos en donde le corresponde al TPI asumir la jurisdicción para atender y adjudicar las controversias en sus méritos. Argumentó que la *Segunda Demanda Enmendada* alega que las primas de todos los patronos fueron fijadas en violación a las disposiciones de la Ley Núm. 45, *supra*, la LPAU, *supra*, y la Constitución por lo que el remedio que provee el Art. 22 de la Ley Núm. 45, *supra*, sec. 25, no es uno adecuado.

Asimismo, arguyó que persisten controversias sustanciales entre las partes que justifican que el foro primario intervenga y dicte sentencia declarando los derechos de las partes. También, adujo que se cumplen con los requisitos para las causas de acción de enriquecimiento injusto y cobro de lo indebido.

---

[10] Véase Entrada núm. 60 del expediente digital del caso en SUMAC-TPI.

El 31 de octubre de 2024, el TPI celebró una *Vista argumentativa* en torno a la moción de desestimación radicada por la CFSE.[11] Según surge de la *Minuta*, la parte apelante argumentó sobre la sentencia declaratoria que solicitó. Por su parte, el CFSE argumentó que el tribunal no tiene jurisdicción y que, si así lo determina, no tiene que entrar a considerar los documentos anejados a la moción de desestimación. Entre tanto, el TPI auscultó el por qué la parte apelante reclamó remedios que provee la ley orgánica del CFSE, la que dispone que es la Comisión Industrial el foro que atiende dichos asuntos. Escuchadas las partes, el TPI le concedió un término de diez (10) días a la CFSE para suplementar su argumentación en torno a los remedios que provee la Ley Núm. 45, *supra.*

El 8 de noviembre de 2024, la CFSE presentó una *Moción en cumplimiento de orden* para suplementar su argumentación en cuanto a los remedios que provee la Ley Núm. 45, *supra.*[12] En esta, expuso que los patronos que se hayan visto afectados por las decisiones del Administrador en cuanto a la clasificación, fijación, regulación o aumento de las primas de seguro tienen que presentar una apelación ante la Comisión Industrial, en virtud de los Artículos 21 y 22 de la Ley Núm. 45, *supra*, secs. 24 y 25, y que esta debe presentarse dentro de los treinta (30) días siguientes a partir de la promulgación de las nuevas tarifas de primas incorporadas en el Manual de Clasificaciones, a saber, el 1 de julio de cada año.

Sobre el proceso de adopción del manual, señaló que el mismo se encuentra regulado por el *Reglamento para Gobernar el Seguro de Compensaciones por Accidentes de Trabajo*, Reglamento Núm. 9220 del 30 de septiembre de 2020, y Ley Núm. 45, *supra,* y cuyo propósito es establecer un marco normativo. Expuso que dicho

---

[11] Véase Entrada Núm. 64 del expediente digital del caso en SUMAC-TPI.
[12] Véase Entrada Núm. 63 del expediente digital del caso en SUMAC-TPI.

reglamento le impone la obligación al Administrador de celebrar vistas publicas antes del 1 de junio de cada año y a promulgar las nuevas tarifas de las primas a mas tardar el 1 de julio de cada año, notificándolo a todos los patronos asegurados. Alegó además que este no constituye un reglamento, sino que funciona como una guía interna cuyo propósito principal es comunicar las tarifas que se aplican a cada tipo de oficio o industria y no regula ningún procedimiento administrativo.

De otra parte, arguyó que la revisión de estudios actuariales y evaluación de tarifas cuestionada por la parte apelante requieren de un conocimiento especializado y experiencia técnica que tiene la Comisión Industrial. Por tanto, adujo que esta debe ser quien atienda en primera instancia los reclamos de la parte apelante. Asimismo, alegó que las tarifas impuestas cumplen con una función específica de solvencia y compensación laboral para casos de accidentes en el lugar de trabajo y no una carga fiscal para los patronos por lo que no se trata de un asunto de estricto derecho que deba ser atendido por el TPI.

El 6 de diciembre de 2025, la parte apelante presentó una *Oposición a Moción en cumplimiento de orden.*[13] En esta, arguyó que el Reglamento Núm. 9220 no detalla un proceso reglamentario claro para la adopción, revisión o actualización del Manual de Clasificaciones conforme a los requisitos de la Ley Núm. 45, *supra*, y la LPAU, *supra*, limitándose a describir procedimientos genéricos para calcular las primas basadas en nóminas y otras remuneraciones. Alegó además que el Manual de Clasificaciones y la fórmula para el cálculo de primas son reglas de tipo legislativo por lo que la CFSE está obligada a cumplir con los requisitos mínimos de la LPAU, *supra*.

---

[13] Véase Entrada Núm. 68 del expediente digital del caso en SUMAC-TPI.

Adujo que la Ley Núm. 45, *supra*, exige que las primas a cobrarse sean recomendadas por un actuario y que su ausencia constituye una clara y patente violación de los derechos de los patronos a recibir información adecuada. Argumentó que la controversia del caso no es un reclamo administrativo individual relacionado con la aplicación de una prima particular, sino un cuestionamiento directo a la legalidad y constitucionalidad de las primas establecidas, formuladas y cobradas por el CFSE en contravención a su ley orgánica. Por ello, solicitó que el TPI asuma jurisdicción sobre las controversias planteadas, en reconocimiento de que estas son de naturaleza constitucional y jurídica, fuera del ámbito de la Comisión Industrial o cualquier otro foro administrativo.

El 10 de abril de 2025, el TPI emitió una *Sentencia* mediante la cual declaró Ha Lugar la *Moción de desestimación de la Segunda Demanda Enmendada* radicada por el CFSE y, consecuentemente, desestimó la *Segunda Demanda Enmendada*.[14] El foro primario acogió por referencia e hizo formar parte integra de la *Sentencia* los argumentos y fundamentos de derecho esbozados por la CFSE en sus escritos. Adicional, delimitó que no existía controversias sobre lo siguiente:

1) Durante décadas, los patronos de las distintas industrias que la CFSE ha clasificado en Puerto Rico han hecho uso del mecanismo de revisión de primas que les provee el Artículo 22 de la Ley Número 45 del 18 de abril de 1935 (Ley 45-1935), comúnmente conocida como la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 LPRA §§ 25;
2) Los demandantes que comparecen en el presente pleito debieron presentar sus reclamos bajo dicho procedimiento administrativo de revisión de primas;
3) Los demandantes que comparecen en el presente pleito desaprovecharon tal oportunidad; y
4) Los demandantes que comparecen en el presente pleito pretenden utilizar el presente pleito como subterfugio para reclamar lo que no reclamaron oportunamente –

---

[14] Véase Entrada núm. 71 del expediente digital del caso en SUMAC-TPI. Notificada y archivada digitalmente en autos el 11 de abril de 2025.

bajo el procedimiento que fue creado por la Asamblea Legislativa para ello.

Oportunamente, el 24 de abril de 2025, la parte apelante presentó una *Moción Solicitando Reconsideración de Sentencia.*[15] Alegó que el foro primario erró al abstenerse de resolver los planteamientos constitucionales expuestos en la *Segunda Demanda Enmendada.* Asimismo, manifestó que alegó detalladamente múltiples violaciones sustanciales a derechos constitucionales, entre estas, la usurpación del poder legislativo, la imposición de contribuciones sin autoridad legal, y la denegación de un proceso de ley con garantías mínimas y que estas son controversias de derecho que no requieren agotamiento de remedios administrativos, sino que es el TPI quien los debe atender. Además, arguyó que incorrectamente el TPI resolvió controversias de hechos y evaluó prueba extrínseca en contravención a la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2. Por ello, solicitó que se dejara sin efecto la *Sentencia* y deniegue la moción de desestimación.

El 16 de junio de 2025, el TPI emitió una *Orden* mediante la cual declaró No Ha Lugar la reconsideración.[16] En esta, dispuso que la parte apelante no sometió declaración jurada para justificar la necesidad de llevar a cabo un descubrimiento de prueba y así oponerse a los argumentos y/o documentos presentados por la CFSE.

Inconforme con la determinación del TPI, la parte apelante presentó el recurso de apelación de epígrafe en el que hizo los siguientes señalamientos de error:

**ERRÓ EL TPI AL RESOLVER QUE LAS DEMANDANTES DEBÍAN AGOTAR REMEDIOS ADMINISTRATIVOS ANTE LA COMISIÓN INDUSTRIAL BAJO EL ARTÍCULO 22 DE LA LEY 45 Y QUE LA COMISIÓN TIENE JURISDICCIÓN**

---

[15] Véase Entrada núm. 72 del expediente digital del caso en SUMAC-TPI.
[16] Véase Entrada núm. 73 del expediente digital del caso en SUMAC-TPI.

**PRIMARIA SOBRE LAS CONTROVERSIAS OBJETO DE LA SEGUNDA DEMANDA ENMENDADA.**

**ERRÓ EL TPI AL ACEPTAR DOCUMENTOS EXÓGENOS A LAS ALEGACIONES EN APOYO A LA MOCIÓN DE DESESTIMACIÓN SIN CONVERTIR LA MOCIÓN DE DESESTIMACIÓN DE LA SEGUNDA DEMANDA ENMENDADA EN UNA MOCIÓN DE SENTENCIA SUMARIA SEGÚN LO REQUIERE LA REGLA 10.2(5) DE PROCEDIMIENTO CIVIL.**

La parte apelante alegó que la *Segunda Demanda Enmendada* contiene alegaciones de violaciones sustanciales de derechos constitucionales y asuntos estrictamente de derecho que no requieren la pericia o intervención de la Comisión Industrial. Además, expuso que, al presentar directamente el caso ante el TPI, la controversia jurisdiccional se torna sobre la doctrina de jurisdicción primaria y no sobre agotamiento de remedios administrativos por lo que arguyó que la Comisión Industrial no tiene jurisdicción primaria sobre este caso. Añadió además que alegó con suficiente especificidad que el remedio administrativo disponible es inadecuado.

También, alegó que la fórmula que utiliza la CFSE para el cálculo de las primas no ha sido aprobada mediante reglamento alguno que haya sido propuesto, objeto de vistas públicas o radicado en el Departamento de Estado de conformidad con la LPAU, *supra.* Por ello, argumentó que tal incumplimiento con el proceso de reglamentación es una controversia estrictamente de derecho que no requiere la pericia de la agencia por lo que ni la CFSE ni la Comisión Industrial tienen jurisdicción primaria.

Asimismo, alegó que erró el TPI en su decisión porque la moción de desestimación estaba apoyada en documentos exógenos a las alegaciones de la *Segunda Demanda Enmendada* y debió ser convertida en una moción de sentencia sumaria. Sostuvo que la *Moción de Desestimación* radicada por CFSE es en realidad una moción de sentencia sumaria que no cumple con los requisitos de la

Regla 36 de Procedimiento Civil, *supra*. Por lo anterior, solicitó la revocación de la *Sentencia* apelada.

Por su parte, el 12 de agosto de 2025, CFSE presentó un *Alegato de la parte apelada* en la que alegó que la legislación que rige la CFSE establece un mecanismo específico para que los patronos impugnen o soliciten la revisión de las primas impuestas y que, a pesar de la disponibilidad de dicho remedio, la parte apelante optó por evadir la jurisdicción exclusiva de la Comisión Industrial y el requisito de agotamiento de remedios administrativos. Por ello, sostuvo que, como cuestión de derecho, procede la desestimación de la *Segunda Demanda Enmendada* por falta de jurisdicción del TPI. Adujo que la parte apelante alegó sin base fáctica ni especificidad violaciones a sus derechos de propiedad y al debido proceso de ley. Asimismo, manifestó que la Ley Núm. 45, *supra*, exige que cualquier objeción o reclamación sobre la determinación de primas se tramite conforme a los mecanismos y términos dispuestos en la ley, términos que la parte apelante dejó pasar.

Además, arguyó que el TPI resolvió la *Moción de desestimación* sin involucrar controversias fácticas ni adjudicó prueba exógena, sino que, al acoger los fundamentos de jurisdicción primaria y agotamiento de remedios administrativos expuestos por la CFSE, el TPI no incurrió en conversión alguna de la moción a una de sentencia sumaria ni estaba obligado a hacerlo.

En adelante, pormenorizaremos el derecho aplicable al presente recurso.

**III.**

**A.**

La Regla 10.2 de Procedimiento Civil, *supra*, permite que un demandado solicite del tribunal la desestimación de la demanda presentada en su contra, antes de contestar o por medio de la misma contestación a la demanda, bajo los siguientes fundamentos: (1)

falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio, o (6) dejar de acumular una parte indispensable. ***Blassino Alvarado v. Reyes Blassino***, 214 DPR 823, 833 (2024); ***Cobra Acquisitions v. Mun. Yabucoa et al.***, 210 DPR 384, 396 (2022).

Además, la precitada regla dispone que si en una moción de desestimación fundamentada en la Regla 10.2(5) de Procedimiento Civil, *supra*, se exponen materias no contenidas en la alegación impugnada, y el tribunal no las excluye, la moción debe considerarse como una solicitud de sentencia sumaria. En ese caso, estará sujeta a todos los trámites ulteriores provistos por la Regla 36 de Procedimiento Civil, *supra*, hasta su resolución final y todas las partes deberán tener oportunidad razonable de presentar toda materia pertinente a tal moción bajo dicho Regla. Regla 10.2 de Procedimiento Civil, *supra*.

No obstante, "siempre que surja, por indicación de las partes o de algún otro modo, que el tribunal carece de jurisdicción sobre la materia, éste desestimará el pleito". Regla 10.8 (c) de Procedimiento Civil, *supra*, R. 10.8 (c); ***González v. Mayagüez Resort & Casino***, 176 DPR 848, 855 (2009). Según lo anterior, se puede desestimar una reclamación por tratarse de la jurisdicción de una agencia administrativa o de la esfera federal, y, por lo tanto, bajo la Regla 10.8 (c) de Procedimiento Civil, *supra*, se les ordena a los tribunales estatales a desestimar la reclamación cuando surge ausencia de jurisdicción sobre la materia ante el foro aludido. ***González v. Mayagüez Resort & Casino***, supra, pág. 855.

**B.**

La jurisdicción es la autoridad que tiene el tribunal para poder resolver casos y controversias. ***Torres Alvarado v. Madera***

*Atiles*, 202 DPR 495 (2019). En Puerto Rico los tribunales ostentan la jurisdicción general, lo que significa que tienen "autoridad para atender cualquier causa de acción que presente una controversia propia para adjudicación, a menos que no tengan jurisdicción sobre la materia". ***Rodríguez Rivera v. De León Otaño***, 191 DPR 700, 708 (2014). Sin embargo, el Estado es quien puede otorgar o privar a un tribunal de jurisdicción sobre la materia mediante legislación a esos efectos. ***Rodríguez Rivera v. De León Otaño***, supra, pág. 708-709. La ausencia de falta de jurisdicción conlleva los siguientes efectos en los dictámenes emitidos: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal motu proprio. ***González v. Mayagüez Resort & Casino,*** 176 DPR 848, 855 (2009).

Por otro lado, la doctrina de jurisdicción primaria es una de autolimitación judicial para determinar cuál foro es el apropiado para atender la controversia. ***Colón Rivera et al. v. ELA***, 189 DPR 1033, 1057 (2013). La jurisdicción primaria tiene dos vertientes que son: la jurisdicción primaria concurrente y la jurisdicción primaria exclusiva. ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, 204 DPR 89, 103 (2020). La primera vertiente es cuando la ley permite que la agencia administrativa o el tribunal tengan jurisdicción. ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, supra, pág. 103. En la jurisdicción primaria concurrente, tanto el foro judicial como el administrativo tienen jurisdicción, pero la primacía se cede a la agencia por esta tener el conocimiento

especializado. ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, supra, pág. 103. En cambio, cuando se trata de la jurisdicción primaria exclusiva la ley distingue que la agencia será el único foro autorizado para resolver tal controversia. ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, supra, pág. 103. Cabe destacar que, la designación de jurisdicción exclusiva debe ser clara y especifica. ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, supra, pág. 104. Para poder determinar si la jurisdicción es exclusiva corresponde hacer un análisis sobre si la delegación es expresa o es implícita. ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, supra, pág. 104. Además, si la jurisdicción es exclusiva permite la revisión judicial hasta que la agencia emita su determinación final. ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, supra, pág. 104.

### C.

La Ley Núm. 45, *supra*, es un estatuto de carácter remedial que consagra ciertas garantías y beneficios al obrero que sufre un accidente o enfermedad en el curso del trabajo. ***Rivera v. Blanco Velez Stores***, 155 DPR 460, 466 (2001). Así, dicha Ley establece un sistema de seguro compulsorio, mediante la correspondiente aportación patronal, que persigue proveer un remedio expedito y eficiente a los empleados. ***Hernandez Morales v. C.F.S.E.,*** 183 D.P.R. 232, 240 (2011). Este sistema está fundamentado en el precepto constitucional de que todo trabajador debe estar protegido contra riesgos a su salud en su lugar de empleo. 11 LPRA sec. 1a. Dicho seguro compensa al obrero que se ha lesionado, incapacitado, enfermado o fallecido a causa de un accidente ocurrido en el trabajo. ***Lebrón Bonilla v. E.L.A.***, 155 DPR 475, 481-482 (2001).

En virtud de dicha Ley, y para llevar a cabo sus propósitos, se crea la Corporación del Fondo del Seguro del Estado. El Artículo 1-B de la Ley Núm. 45, *supra*, sec. 1B, establece las facultades y

poderes generales de la CFSE, así como de la Junta de Directores y de su Administrador. Por otro lado, como parte de los componentes de dicho organismo, el Artículo 6 de la Ley Núm. 45, *supra*, sec. 8(B) creó lo que se denomina como la Comisión Industrial de Puerto Rico, quien se encargara de velar por el cumplimiento de objetivos de la precitada Ley.

En lo pertinente a este recurso, el Artículo 21 de la Ley Núm. 45, *supra*, sec. 24, dispone que es deber del Administrador de la CFSE, antes del 1 de junio de cada año, preparar una lista con las clasificaciones de acuerdo con los oficios y la industria a los que se refiere la Ley, y fijar para éstos la prima correspondiente. Este "deberá fijar para cada clase de oficio o industria las primas más bajas posibles, incluyendo primas mínimas, que sean consistentes con la pretensión de establecer un Fondo de Seguro de Estado solvente y de crear un sobrante razonable". Íd. Asimismo, deberá revisar las listas de clasificaciones que a su juicio deban revisarse, antes del 1 de julio de 1936 y, subsiguientemente, todos los años, como también las primas, incluyendo las primas mínimas, que correspondan a las clasificaciones vigentes que entienda que deban revisarse. Íd. Además, el precitado articulo dispone que las primas, incluyendo las mínimas, para cada clase de oficio o industria, deberán ser las más bajas posibles consistentes con el criterio del actuario, con la pretensión de conservar solvente el Fondo del Estado y el sostenimiento de un sobrante razonable. Íd.

Cónsono con lo anterior, el Artículo 22 de la Ley Núm. 45, *supra*, sec. 25, provee para que las decisiones del Administrador de la CFSE sobre la fijación y regulación de las primas para cada grupo de oficio o industria y la clasificación de primas puedan ser revisadas por la Comisión Industrial. Específicamente, dispone en lo pertinente lo siguiente:

1. El patrono regular o permanente, perjudicado podrá radicar en la Comisión Industrial de Puerto Rico **dentro del término de treinta (30) días después de promulgados los nuevos tipos, o el patrono eventual o temporero dentro de los treinta (30) días subsiguientes a la obtención de su póliza**, una petición para que por la Comisión Industrial de Puerto Rico se proceda a la revisión de las decisiones del Administrador con relación a los tipos o primas para uno o más oficios o industrias, dando los motivos por qué dichos tipos o primas deban enmendarse; y se requerirá que el Administrador comparezca y conteste dicha petición dentro del término de quince (15) días. La Comisión le dará preferencia al caso sobre los demás casos del calendario, y procederá a dictar su decisión final de acuerdo con las reglas que dicha Comisión haya promulgado.

2. La revisión a que se hace referencia en el inciso (1) no suspenderá en modo alguno el cobro de primas ni los efectos de ninguna otra disposición de esta Ley; ni tampoco expedirán los tribunales autos de *injunction* prohibiendo el cobro de dichas primas o contribuciones mientras se esté revisando el caso.

3. En caso que la Comisión resuelva en el sentido de rebajar la prima que el Administrador haya fijado para cualquier clase de oficio o industria, **no se ordenará en ningún caso ni al Administrador del Fondo del Estado, ni al Secretario de Hacienda, que devuelvan el exceso que se haya pagado en primas o contribuciones sino que dicho exceso, se descontará de las primas o contribuciones que hayan de recaudarse en el futuro a los patronos que hayan radicado las peticiones**.

4. En el caso que se modifique una clasificación por orden o decreto de la Comisión según se dispone en la presente, el Administrador calculará nuevos tipos, primas o contribuciones en la forma que determine la Comisión para aquellos patronos que tengan obreros o empleados comprendidos en la clasificación o clasificaciones objetadas; Disponiéndose, que dichos tipos, primas o contribuciones regirán hasta que termine el año económico a que pertenecía dicha clasificación o clasificaciones. (Énfasis suplido).

Además, el precitado artículo establece que para que estas disposiciones sobre la revisión de primas se puedan llevar a cabo, el Administrador deberá celebrar vistas públicas antes del 1 de junio de cada año, notificando a todos los patronos asegurados de manera que estos puedan comparecer y cuestionar si así lo entienden necesario. Íd.

### D.

La LPAU, *supra,* se creó a los fines de uniformar los procedimientos administrativos ante las agencias. A tenor con esto, las agencias administrativas gozan del poder cuasi legislativo de

aprobar reglas y reglamentos. ***Sierra Club v. Junta de Planificación***, 203 DPR 596, 605 (2019). Estas pueden formular reglas no legislativas y reglas legislativas. Íd. Las reglas no legislativas "constituyen pronunciamientos administrativos que no alteran los derechos ni las obligaciones de los individuos". ***Mun. de Toa Baja v. D.R.N.A.***, 185 DPR 684, 696 (2012). En cambio, regla legislativa "crea derechos, impone obligaciones y establece un patrón de conducta que tiene fuerza de ley". ***Mun. de San Juan v. J.C.A.***, 152 DPR 673, 692 (2000).

Para esto, la LPAU, *supra*, estableció unas reglas mínimas al proceso de reglamentación a aquellas agencias cuya ley orgánica les confiera dicho poder. Al momento de aprobar, enmendar o derogar un reglamento, la LPAU, *supra*, les exige a las agencias administrativas el cumplimiento de los siguientes requisitos:

> (1) notificar al público la reglamentación que ha de aprobarse; (2) proveer oportunidad para la participación ciudadana, incluyendo vistas públicas cuando sea necesario u obligatorio; (3) presentar la reglamentación ante el Departamento de Estado para la aprobación correspondiente, y (4) publicar la reglamentación aprobada. ***Mun. de Toa Baja v. D.R.N.A.***, supra, pág. 694 (2012); 3 LPRA sec. 9611–9613, 9618 y 9621.

La LPAU, *supra*, define lo que constituye una regla o reglamento como:

> [C]ualquier norma o conjunto de normas de una agencia que sea de aplicación general que ejecute o interprete la política pública o la ley, o **que regule los requisitos de los procedimientos o prácticas de una agencia que tenga fuerza de ley**. El término incluye la enmienda, revocación o suspensión de una regla existente. 3 LPRA sec. 9603(m) (Énfasis suplido).

Cabe destacar que la propia LPAU, *supra*, expresamente excluye de esta definición, entre otros, los documentos guías. Íd. La Sección 1.3 (c) define documento guía de la siguiente manera:

> [U]n documento físico o electrónico de aplicabilidad general desarrollado por una agencia, que carece de fuerza de ley[,] pero expresa la interpretación de la agencia sobre alguna legislación, la política pública de la agencia o que describe cómo y cuándo la agencia ejercerá sus funciones

discrecionales. Incluye interpretaciones oficiales, según definidas en esta Ley. 3 LPRA sec. 9603(c).

A su vez, la Sección 2.20 de la LPAU, *supra,* dispone que una agencia podrá emitir documentos guías sin que este sujeto al proceso reglamentario del Capitulo II de la Ley.

**IV.**

Mediante la *Segunda Demanda Enmendada,* la parte apelante solicitó al TPI que dictara una sentencia declaratoria estableciendo que la CFSE ha actuado ilegal y *ultra vires* al fijar y cobrar las primas a los patronos asegurados sin cumplir con procedimientos establecidos por la Ley Núm. 45, *supra,* por alegadamente no contar con estudios actuariales que las justifiquen ni reglamentación válida para establecerlas conforme a la LPAU, *supra.*

Tras la solicitud de desestimación que radicó CFSE, el TPI dictó *Sentencia* desestimando la *Segunda Demanda Enmendada.* El TPI acogió los fundamentos esbozados por la CFSE. No obstante, determino como un hecho fuera de controversia que la parte apelante debió presentar sus reclamos bajo el procedimiento administrativo de revisión de primas que ha sido utilizado por distintas industrias clasificadas por la CFSE y que desaprovecharon tal oportunidad.

La parte apelante arguyó mediante su recurso de *Apelación* que el TPI tenía el deber de ejercer su jurisdicción y resolver las controversias planteadas porque estas no requieren del peritaje administrativo y se refieren a violaciones sustanciales de derechos constitucionales. Manifestó además que alegó con especificidad que el remedio administrativo disponible es inadecuado, que hubo violación del debido proceso y que la CFSE actuó *ultra vires.* Expuso que varias de las reclamaciones de la *Segunda Demanda Enmendada* están ancladas en el incumplimiento por parte de la CFSE con la Ley Núm. 45, *supra,* entre estos, el requisito de que se

utilicen servicios actuariales para la revisión y fijación de los tipos tarifarios al amparo del Artículo 1-b(4)(j); y que las primas establecidas sean las más bajas posibles conforme al Artículo 24 de la Ley. De igual manera, sostuvo que el incumplimiento con el proceso de reglamentación de los manuales de clasificaciones es una controversia estrictamente de derecho que tampoco requiere la pericia de la agencia.

En cuanto al segundo señalamiento de error, adujo que erró el TPI al resolver la *Moción de Desestimación* considerando evidencia extrínseca a las alegaciones de la *Segunda Demanda Enmendada* y sin convertir la moción en una de sentencia sumaria sujeta a los requisitos de la Regla 36 de Procedimiento Civil, *supra,* tal como exige la Regla 10.2(5) de Procedimiento Civil, *supra.*

Por su parte, la CFSE arguyó que el TPI no adjudicó ninguna controversia fáctica ni evaluó contenido sustantivo de documentos ajenos a la demanda, sino que la determinación se basó exclusivamente en que la parte apelante no hizo uso del proceso administrativo dispuesto por Ley Núm. 45, *supra,* para impugnar las clasificaciones y primas. Por ello, adujo que el TPI actuó correctamente al resolver la moción de desestimación por jurisdicción sin convertirla en una moción de sentencia sumaria.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso y de los argumentos esbozados por las partes, en correcta práctica adjudicativa apelativa, resolvemos que el TPI no incurrió en los errores señalados. Por el contrario, la determinación apelada es correcta en derecho.

Precisamente, el Artículo 22 de la Ley Núm. 45, *supra,* sec. 25, establece claramente que el patrono perjudicado por las decisiones del Administrador de CFSE fijando las primas y su clasificación para cada grupo de oficio o industrias, podrá radicar una petición ante la

Comisión Industrial para revisar tal decisión. Esto, dentro de los treinta (30) días subsiguientes a la obtención de su póliza.

Como pormenorizamos en la sección anterior, la jurisdicción primaria exclusiva conferida al organismo implica que "los tribunales quedan excluidos de intervenir en primera instancia en las materias o los asuntos sobre los cuales se le ha conferido la jurisdicción exclusiva a una agencia". ***Rodríguez Rivera v. De León Otaño***, supra, pág. 709. En el caso de marras, resulta claro que la Asamblea Legislativa le otorgó la jurisdicción primaria exclusiva a la Comisión Industrial para atender los planteamientos de los patronos con relación a la clasificación, fijación o revisión de primas para cada grupo de oficio o industrias.

Por tanto, es forzoso concluir que, el TPI actuó correctamente en derecho al resolver que es la Comisión Industrial quien tiene la jurisdicción para dilucidar la acción. Ciertamente, la parte apelante tenía otros remedios adecuados en ley para impugnar la clasificación, fijación o revisión de primas.

Además, enfatizamos que el hecho de que la parte apelante haya alegado cuestiones constitucionales no es óbice para evadir las facultades que le fueron delegadas por la Asamblea Legislativa a la Comisión Industrial para revisar las decisiones del Administrador sobre las primas determinadas que es esencialmente su reclamo. Incluso, el Tribunal Supremo ha expresado que la jurisdicción primaria del foro administrativo puede ceder ante un planteamiento de violación a derechos constitucionales, no obstante, "ello no implica que una simple alegación [de que se han violado derechos constitucionales] excluya el foro administrativo". ***Beltrán Cintrón v. Estado Libre Asociado de Puerto Rico***, supra, pág. 104; ***First Fed. Savs. v. Asoc. de Condómines***, 114 DPR 426, 438 (1983).

En el presente caso, el foro *a quo* actuó correctamente al resolver que la Comisión Industrial ostenta jurisdicción primaria

exclusiva sobre la controversia ante nos, por lo cual la parte apelante deberá presentar en primera instancia un caso ante dicho ente administrativo para su determinación. Una vez se cumpla con la formalidad del trámite administrativo, de no estar conforme con el resultado, tendrá la oportunidad de presentar su reclamo al foro judicial.

En cuanto al segundo señalamiento de error, la Regla 10.2 de las de Procedimiento Civil, *supra*, establece de forma clara que la moción de desestimación se atenderá como una solicitud de sentencia sumaria únicamente cuando la misma esté fundamentada en la defensa establecida en el inciso 5, entiéndase dejar de exponer una reclamación que justifique la concesión de un remedio, y la parte promovente exponga materias no contenidas en la alegación impugnada y las mismas no sean excluidas por el tribunal. En este caso, la causa para la desestimación invocada por la CFSE versó sobre la falta de jurisdicción del tribunal por la existencia de remedios administrativos ante la Comisión Industrial. Por consiguiente, no estaba obligado a convertir la solicitud en una de sentencia sumaria. Por lo tanto, no erró el TPI al acoger la moción de la CFSE como una solicitud de desestimación.

Por todo lo anterior, resulta forzoso concluir que el TPI no cometió los errores señalados, sino que actuó correctamente en derecho y, por lo tanto, corresponde confirmar la *Sentencia* apelada.

**V.**

Por los fundamentos anteriormente esbozados, se confirma la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones. El Juez Sánchez Ramos disiente por considerar que al menos uno de los asuntos planteados en la demanda de referencia, en torno a la validez jurídica del proceso mediante el cual la agencia demandada establece sus primas, puede y debe atenderse por el

Tribunal de Primera Instancia. El proceso administrativo de "revisión de primas" no está diseñado para, ni a través del mismo realmente se puede, dilucidar la referida controversia de derecho.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones